# Richmond

ARTHUR J. KNIGHT v. COMMONWEALTH OF VIRGINIA.

October 11, 1954.

Record No. 4293.

Present, Eggleston, Spratley, Buchanan, Miller and Whittle, JJ.

The opinion states the case.

*J. Eugene Diggs* and *Broudy & Broudy*, for the plaintiff in error.

*J. Lindsay Almond, Jr., Attorney General* and *C. F. Hicks, Assistant Attorney General*, for the Commonwealth.

SPRATLEY, J., delivered the opinion of the court.

This writ of error brings under review the proceedings in the trial of Arthur J. Knight, hereinafter referred to as the defendant, who was convicted of burglary and sentenced in accordance with the verdict of the jury to five years in the penitentiary. The defendant asks us to reverse the judgment on the grounds that the verdict was contrary to the law and the evidence, that certain remarks by the Attorney for the Commonwealth to the jury were prejudicial, and that the court erred in admitting improper evidence.

On the night of April 10, 1953, about eleven-fifteen o'clock, two members of the police force of the City of Norfolk, in response to a call, went to the storehouse and premises of the E. V. Williams Company in that City. They found a door of the storehouse broken open, the combination knocked off an iron safe, and a half dozen adding machines and several other machines collected near the broken door. Before the door a dump truck was parked. They apprehended two men on the premises, James A. Gressom and Paul Britton, and placed them under arrest. Detective Sergeant O. L. Murden came to the scene and took Gressom and Britton to Detective Headquarters. There he questioned the two prisoners, and both of them made detailed signed statements, in which they admitted their guilt and described what they did in connection with the break-in. They also named Arthur J. Knight and two other persons as participants in the offense. Sergeant Murden arrested Knight on April 20, 1953, on a warrant charging him with breaking and entering the storehouse of the Williams Company.

At the May term, 1953, of the Corporation Court of the City of Norfolk, the defendant was jointly indicted with Britton and Gressom for statutory burglary, Code of Virginia, 1950, § 18-161. Britton and Gressom, upon their trial, entered pleas of guilty, and the imposition of their sentences was deferred awaiting the outcome of the trial of Arthur J. Knight, who elected to be tried separately.

Knight was tried on July 16, 1953, upon his plea of not guilty. Britton and Gressom then appeared as witnesses

for the Commonwealth. They admitted their guilt, and, in accordance with their written statements, given to the police, testified that the defendant instigated the offense charged, and participated with them in its commission, acting, part of the time, as a "lookout." ·

Sergeant Murden testified that when he arrested Knight, he told him he had a warrant charging him with breaking and entering the place in question; that he gave him a copy of the warrant; and that Knight immediately denied any connection with the offense, saying that he "was just being picked up because of his record." Knight was taken into custody and carried to jail. Over the vigorous objection of the defendant, Sergeant Murden was allowed to testify that he then brought Gressom and Britton to the jail where Knight was held; that in the presence of Knight and the two prisoners, he read the detailed statements of Gressom and Britton implicating the defendant; that he asked Gressom and Britton if their statements were correct, and they both answered "Yes;" and that the defendant then made no statement.

At the conclusion of that interview, Sergeant Murden said that he took Knight to the Detective Bureau, and there questioned him about the charge against him, and the defendant again denied that he had any part in its commission.

It was shown that Britton had previously been convicted of housebreaking and grand larceny in 1949, of storebreaking in 1950, and again in 1951; and that Gressom had been convicted in 1940, 1948 and 1951, on three separate charges of storebreaking, and a charge of attempted storebreaking.

The defendant did not testify. While there was other evidence presented at the trial, it is not material to the principal question here involved.

We will first consider the third assignment of error, which, we think, controls our disposition of the case.

The defendant challenges the action of the trial court in permitting to be introduced in evidence the detailed written statements of his alleged accomplices, and the testimony of

Sergeant Murden that he (the defendant) remained silent when those statements were read to him and verified by Gressom and Britton. He contends that, under the circumstances, that testimony was purely hearsay and inadmissible as evidence. Moreover, defendant argues that it is inadmissible upon the further ground that he was under formal arrest at the time of the accusatory statement, and that such restraint destroyed the basis for any inference of acquiescence in the charge, by reason of his silence.

The general rule that when a statement accusing one of the commission of an offense is made in his presence and hearing and is not denied or contradicted by him, both the statement and the fact of his failure to deny are admissible in a criminal proceeding against him, as evidence of his acquiescence in its truth, is based on the theory that the natural reaction of one accused of a crime is to deny the accusation if it is unjust or untrue. The accusation and his silence thereunder to be admissible must, however, have been under such circumstances as would naturally call for a reply or denial, and such as would afford a favorable opportunity for denial.

In 20 Am. Jur., Evidence, § 570, pages 483 and 484, this is said:

"The *hearsay character of the incriminating statement made to the accused would render it inadmissible,* except for the fact that the statement is not offered in evidence as proof of a fact asserted but as a predicate to the showing of the reaction of the accused thereto. *Caution must be exercised, however, in receiving evidence of a statement made to the accused and his failure to deny it.* In order that the silence of one accused of crime following a statement of a fact tending to incriminate him may have the effect of a tacit admission, he must have heard the statement and have understood that he was being accused of complicity in a crime, the circumstances under which the statement was made must have been such as would afford him an opportunity to deny or object, *and the statement must have been*

*such, and made under such circumstances as would naturally call for a reply. The test is whether men similarly situated would have felt themselves called upon to deny the statements affecting them in the event they did not intend to express acquiescence by their failure to do so. * * *"* (Emphasis added.)

Mr. Justice Eggleston in *Owens* v. *Commonwealth,* 186 Va. 689, 43 S. E. (2d) 895, has collected and reviewed the authorities bearing upon the admissibility of evidence of the general character of that given by Sergeant Murden, and correctly stated that the authorities on the subject are divided. See 20 Am. Jur., Evidence, § 574, page 486; 22 C. J. S., Criminal Law, § 734 (4), pages 1263, 1264; annotations 80 A. L. R. 1235, 1259, 1267; 115 A. L. R. 1510, 1517, 1519.

In *James* v. *Commonwealth,* 192 Va. 713, 66 S. E. (2d) 513, the facts were somewhat different. The silent admission claimed was a part of a vocal admission made later by the defendant to the sheriff, and the grounds assigned for the exclusion of the evidence were not the same as those here.

In the recent case of *Plymale* v. *Commonwealth,* 195 Va. 582, 79 S. E. (2d) 610, the accused, while under arrest and in custody upon a charge of murder, was confronted by the sheriff and a fire warden. They advised him that he did not have to tell them anything, and that "if he did not want to say anything, it was perfectly all right with us, it did not make any difference." 195 Va. pages 598 and 599. The sheriff then accused him of the murder, stealing the dead man's money and watch, burning his building, and with having made certain false statements. While the accusations were being made the accused remained silent. At the conclusion of the interview, he said he had no statement for the officers and could not tell them anything. On the following morning, the sheriff went again to the cell in the prison where the accused was confined and repeated his accusations, and again the accused made no denial. We held

that his silence, under the circumstances, could not be construed as a tacit admission of guilt, and that the testimony of the officers as to their interviews with him was hearsay.

In reviewing the facts, we find that here the defendant promptly denied guilt when he was arrested. The record does not show, and it is not claimed, that he was asked any question during the confrontation with his alleged accomplices. The defendant, having claimed his innocence, probably knew his rights and did not want to get into any controversy with either the police or Gressom and Britton, neither of whom was trying to do him a favor. There was no occasion for him to break into the interview and make any reply when no question was asked him. As soon as he was questioned, at the conclusion of the interview, he denied guilt, as he did on every occasion when he was interrogated.

We cannot say that, under the circumstances of the confrontation with Gressom and Britton, the defendant was naturally called upon to make a reply or a denial. His position had been firmly taken upon his arrest, and he did not fail to promptly affirm that position immediately following the confrontation with his alleged accomplices. A fair evaluation of the facts and circumstances does not show that he ever intended to admit his guilt by silence or inaction; but it does appear that he has consistently denied the accusation against him. Thus, the testimony of Sergeant Murden as to the statements made in the presence of the defendant, and the defendant's action at that time was actually hearsay and inadmissible. The general rule, therefore, as to such inculpatory statements does not apply in this case.

The only evidence against the defendant was that of the two self-confessed felons and perpetrators of the offense charged. The jury had the right to weigh their evidence, without a consideration of the testimony improperly admitted, and thus it is clear that the rights of the defendant were prejudiced.

In view of what we have said, it is not necessary here to

decide whether or not incriminating statements made in the presence of an accused who is under arrest, or in custody, upon a criminal charge at the time, and not denied by him, are admissible.

Our conclusion makes it also unnecessary to discuss the remaining assignments of error, since these questions are not likely to arise upon a new trial.

For these reasons, the judgment complained of is reversed and a new trial awarded.

*Reversed and remanded.*