Present:  Hassell, C.J., Lacy, Koontz, Kinser, Lemons, and Agee, JJ., and Russell, S.J.

LESTER BERNARD LYNCH, JR.                    OPINION BY
                                  SENIOR JUSTICE CHARLES S. RUSSELL
v.  Record No. 052079                      June 8, 2006

COMMONWEALTH OF VIRGINIA

FROM THE COURT OF APPEALS OF VIRGINIA

Lester Bernard Lynch, Jr., was convicted by a jury in the Circuit Court of the City of Norfolk of first-degree murder, armed robbery, burglary and three firearms offenses.  He was sentenced to a total of 68 years confinement.  The Court of Appeals affirmed the convictions, Lynch v. Commonwealth, 46 Va. App. 342, 617 S.E.2d 399 (2005), and denied a petition for rehearing en banc.  We awarded Lynch an appeal.  There are two assignments of error:  (1) that the Court of Appeals erred in ruling that certain testimony was admissible against Lynch as an adoptive admission, and (2) that the Court of Appeals erred in ruling that a litigant offering evidence under an exception to the hearsay rule has the burden of showing that the exception applies by a preponderance of the evidence, rather than by clear and convincing evidence.

*Facts*

Under familiar principles of appellate review, the facts will be stated in the light most favorable to the Commonwealth, the prevailing party at trial.  On June 9, 2001,

Ronald Scott and Tamika Reid were visiting Scott's mother, Belinda Scott, in her home. Three men entered the house and struck Ronald Scott repeatedly with a gun, robbed him, shot Belinda Scott in the face, fatally, and stole other items from the house before leaving. The surviving witnesses, Ronald Scott and Tamika Reid, both identified the defendant, Lynch, as one of the three perpetrators. Scott also identified Gregory Williams as another of the trio, but neither could identify the third man.

At trial, the court heard the testimony of Kenneth Parker out of the presence of the jury by agreement of counsel. Parker's evidence was proffered by the Commonwealth to lay a foundation for an adoptive admission. At the conclusion of the proffer, the court ruled that Parker's testimony would be admitted under an exception to the hearsay rule. Because this appeal concerns only that ruling, we will confine our consideration of the evidence to the pertinent parts of Parker's proffered testimony on which the ruling was based.

Parker testified that he was visiting Christopher Williams, Gregory's brother, on the day of the crimes. Parker was standing at the head of the stairs in Christopher's house, engaged in a conversation with Christopher, who was standing in his bedroom door. Gregory Williams had recently arrived and was also present. Gregory was telling Christopher what

2

had just happened at the Scott house.  Parker, who knew Ronald Scott and his mother, entered the conversation.  Gregory said that "they had just come from off a sting at Little Ronald's house" and that there was "another little young guy downstairs standing at the car" who was "trigger happy" and had "shot a woman."  While Gregory was telling what had happened at the Scott house, Lynch came up the stairs and said, "why is you telling them what we just done?"

On cross-examination, Parker elaborated.  He testified that he did not know exactly when Lynch entered the house and began overhearing the conversation, but "he might have been standing at the bottom of the stairs listening to us the whole time."  In any event, the conversation had lasted long enough to go into some detail.  Parker, after hearing about the murder, said to Gregory, "you know, that was probably that man's mama."  Gregory replied, "no, it was a skinny lady."  Parker said that Ronald Scott's mother was "skinny."  Gregory said, "probably was his sister."  Parker testified that he then said, "his sister and them don't even stay there.  His mama stay there.  You all probably hurt that man's mama, you know what I am saying?  As I was saying that to him, [Lynch] was coming up the stairs . . . . I am quite sure he was hearing everything."  It was at that point that Lynch asked Gregory "why was he telling us that . . . what we just done."

3

At the conclusion of the proffer, the trial court overruled Lynch's hearsay objection and found that Parker's testimony showed that Lynch had heard the statements that incriminated him, fully understood them, had a full opportunity to deny them, but instead acquiesced in them.  The court admitted the evidence and Parker's testimony before the jury was substantially the same as the proffer.  Neither Gregory Williams nor Christopher Williams testified at the trial.

*Analysis*

A party relying upon an exception to the hearsay rule for the admissibility of evidence bears the burden of persuading the court that the evidence falls within the exception.[*]  We have consistently held that the standard of proof to meet that burden is by a preponderance of the evidence, not by the

---

[*] Lynch contends that the standard of proof required to place evidence within the hearsay exception is "clear and convincing," not a simple preponderance.  Lynch argues that we established such a standard in Doe v. Thomas, 227 Va. 466, 318 S.E.2d 382 (1984), where we quoted from a Texas Supreme Court decision, Skillern and Sons, Inc. v. Rosen, 359 S.W.2d 298, 301 (Tex. 1962), as follows:  "One seeking to have hearsay declarations of a witness admitted as an exception to the general rule must clearly show that they are within the exception."  We referenced the Texas case, not to establish a standard of proof for admissibility, but to illustrate that "[a] party who relies upon an exception to an exclusionary rule of evidence bears the burden of establishing admissibility."  Doe, 227 Va. at 472, 318 S.E.2d at 386.  Nothing we said in Doe stands for the proposition that the standard of proof required to establish the underlying facts necessary to admit a statement under an exception to the hearsay rule is other than proof by a preponderance.

4

higher "clear and convincing" standard. <u>Bloom v. Commonwealth</u>, 262 Va. 814, 821, 554 S.E.2d 84, 87 (2001); <u>Witt v. Commonwealth</u>, 215 Va. 670, 674, 212 S.E.2d 293, 296 (1975). Factual questions must usually be resolved to determine whether the proponent of the evidence has carried that burden, and those antecedent or predicate facts are to be determined by the trial court alone. If the court admits the evidence, the credibility of the witnesses and the weight of the evidence are to be determined by the jury. <u>Bloom</u>, 262 Va. at 821, 554 S.E.2d at 87; <u>Mullins v. Commonwealth</u>, 113 Va. 787, 791, 75 S.E. 193, 195-96, (1912). Therefore, Lynch's second assignment of error is not well taken.

We now turn to the legal correctness of the trial court's decision to admit the statements of Gregory Williams. In <u>Knight v. Commonwealth</u>, 196 Va. 433, 83 S.E.2d 738 (1954), we said:

> The general rule that when a statement accusing one of the commission of an offense is made in his presence and hearing and is not denied or contradicted by him, both the statement and the fact of his failure to deny are admissible in a criminal proceeding against him, as evidence of his acquiescence in its truth, is based on the theory that the natural reaction of one accused of a crime is to deny the accusation if it is unjust or untrue. The accusation and his silence thereunder to be admissible must, however, have been under such circumstances as would naturally call for a reply or denial, and such as would afford a favorable opportunity for denial. . . . The hearsay character of the incriminating statement made to the accused

5

would render it inadmissible, except for the fact that the statement is not offered in evidence as proof of a fact asserted but as a predicate to the showing of the reaction of the accused thereto.

Id. at 436, 83 S.E.2d at 740 (internal quotation marks omitted).

Most of the adoptive admissions that we have considered have been characterized as tacit admissions, or admissions by silence. In such cases, the Commonwealth has the burden of establishing, by a preponderance of the evidence, the predicate facts that (1) the defendant must have heard the incriminating statements, (2) he must have understood that they accused him of complicity in a crime, (3) the circumstances afforded him a fair opportunity to deny or object, and (4) the circumstances would naturally call for a reply. Owens v. Commonwealth, 186 Va. 689, 699, 43 S.E.2d 895, 899 (1947). See Welch v. Commonwealth, 271 Va. 558, 564-65, 628 S.E.2d 340, 343 (2006).

A statement may become admissible under the adoptive admission exception to the hearsay rule upon a showing of its tacit adoption by a party, as well as by more overt demonstrations of adoption. A party may manifest adoption of a statement made by another in any number of ways, including words, conduct, or silence. United States v. Robinson, 275 F.3d 371, 383 (4th Cir. 2001). In some cases, the defendant's

6

words or conduct may supply most, if not all, of the predicate facts that the Commonwealth must prove to bring the evidence within the adoptive admission exception. See, e.g., United States v. Jinadu, 98 F.3d 239, 244 (6th Cir. 1996).

*Conclusion*

The trial court and the Court of Appeals determined that this is such a case, and we agree. Although, as Lynch points out, the Commonwealth's evidence places him outside the house when the conversation began among the three men at the head of the stairs, that fact is immaterial in the light of Lynch's subsequent words and conduct. Although we do not know the exact point at which he began to overhear their conversation, he obviously heard enough of it to propel him into the house and up the stairs to confront them. As he was coming up the stairs, Parker was remonstrating with Gregory Williams by saying: "You all probably hurt that man's mama." Lynch's reaction was immediate. Instead of denying that statement, or any of the preceding conversation, he upbraided Gregory for revealing "what we just done." His words: "Why [are] you telling them" clearly indicate that he had heard and understood the full import of Gregory's statements. Lynch's words and conduct thus supplied all of the predicate facts required by Owens to render Gregory's statements admissible under the adoptive admission exception to the hearsay rule.

7

Accordingly, we will affirm the judgment of the Court of Appeals.

Affirmed.