COURT OF APPEALS OF VIRGINIA

Present:   Judges Frank, Humphreys and Haley
Argued at Chesapeake, Virginia


QUAMAR DE-WONE GREGORY

v.          Record No. 1395-10-1

COMMONWEALTH OF VIRGINIA

MEMORANDUM* OPINION BY
JUDGE JAMES W. HALEY, JR.
JULY 5, 2011


FROM THE CIRCUIT COURT FOR THE CITY OF NEWPORT NEWS
H. Vincent Conway, Jr., Judge

(James S. Ellenson, on brief), for appellant.  Appellant submitting
on brief.

Alice T. Armstrong, Assistant Attorney General (Kenneth T.
Cuccinelli, II, Attorney General, on brief), for appellee.


I.  Introduction

Quamar De-Wone Gregory appeals his convictions for robbery, conspiracy to commit

robbery, murder, and two counts of using a firearm during the commission of a felony.  He

maintains the trial court abused its discretion by admitting hearsay evidence.  We disagree and

affirm.

II.  Facts

On November 23, 2008, Quamar Gregory spent the afternoon drinking alcohol and

smoking marijuana with a group of friends including, among others, Trevor Futrell and Antonio

Williams.  During the afternoon, the group decided to order Chinese food and rob the delivery

driver.  They planned to give the delivery driver an address of a nearby home and use a gun to

frighten the driver into giving them food and money.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

In the early evening, Williams's cousin arrived with the gun the group intended to use to commit the robbery. After drinking more alcohol, Williams left to call the Chinese restaurant from a pay phone. Gregory and Futrell headed to the false address. When Williams found out the Chinese restaurant had closed, he called Futrell, who told him to call Northern Lights Cab Company instead. Williams called the cab company and ordered a taxi to pick up Futrell and Gregory at the false address.

The taxi arrived a few minutes later. The two entered the taxi and shortly thereafter, Gregory bumped Futrell and told him "to get the shit over with." Futrell noticed Gregory was wearing his green bandanna, the signal he was ready. Futrell told the driver to "stop the van and give it up." The driver immediately complied, but nonetheless Futrell shot him in the back of the head. Gregory got out of the taxi and said, "come on." Then he went through the driver's pockets and took money before they both ran back to Futrell's residence.

When the pair returned, Futrell told the group "that he just murked somebody." Futrell then recounted the entire incident. As he did, Gregory stood nearby nodding and saying, "yeah, really." At one point, Gregory interjected, "I thought blood would be everywhere, but it didn't get on me." Futrell divided the money, between $260 and $300, amongst all the participants but gave Gregory more than the others, "because you helped me."

At trial, Williams testified about his role in the planning and execution of the robbery. He described the conversation he had with a female member of the group the evening of the murder. Williams asked her, "did [Futrell] really do it?" She said, "Yeah," and added that Gregory told her he thought it was unnecessary. Williams also established that when Futrell described the robbery and murder to the group, Gregory remained silent despite being only a few feet away.

Tiffany Spivey, also at Futrell's residence on the night of the murder, testified Futrell told the whole story while Gregory, an arm's length away, nodded in agreement and stated, "yeah, really." Gregory nodded his head when Futrell said Gregory picked the driver's pockets after the shooting. She also remembered Gregory interjecting, "I thought blood would be everywhere, but it didn't get on me." The trial judge overruled hearsay objections to both Williams's and Spivey's testimony.

Gregory took the stand in his own defense. He testified he heard the conversation about robbing the Chinese delivery driver, but thought they were going to take just the Chinese food, not money. When that plan fell through, Gregory thought Futrell called a cab to take them home. He claimed he did not have any idea Futrell planned to rob and kill the driver. Gregory admitted he was at Futrell's residence immediately after the shooting, but claimed he was "in shock" and "obviously not" present when Futrell explained what had happened. He did not recall any of the conversations implicating him in the robbery and murder. He said he was "zoned out" and "wasn't paying no attention. I was in another zone."

After the close of evidence, the jury convicted Gregory of robbery, conspiracy to commit robbery, murder, and two counts of using a firearm during the commission of a felony. Gregory appeals, arguing the trial court erroneously admitted hearsay evidence under the adoptive admission exception.

III. Admissibility of Hearsay Evidence Under the Adoptive Admission Exception

Trial courts are given broad discretion over the admissibility of evidence, and their decisions will not be disturbed on appeal absent an abuse of discretion. See Michels v. Commonwealth, 47 Va. App. 461, 465, 624 S.E.2d 675, 678 (2006); Seaton v. Commonwealth, 42 Va. App. 739, 752, 595 S.E.2d 9, 15 (2004). In determining whether the trial court abused its discretion, "'we do not substitute our judgment for that of the trial court. Rather, we consider

only whether the record fairly supports the trial court's action.'" Grattan v. Commonwealth, 278 Va. 602, 620, 685 S.E.2d 634, 644 (2009) (quoting Beck v. Commonwealth, 253 Va. 373, 385, 484 S.E.2d 898, 906 (1997)).  Only when "reasonable jurists could not differ" do we say an abuse of discretion occurred.  Tynes v. Commonwealth, 49 Va. App. 17, 21 635 S.E.2d 688, 689 (2006) (quoting Thomas v. Commonwealth, 44 Va. App. 741, 753, 607 S.E.2d 738, 743, adopted upon reh'g en banc, 45 Va. App. 811, 613 S.E.2d 870 (2005)).

When a "statement accusing one of the commission of an offense is made in his presence and hearing and is not denied or contradicted by him, both the statement and the fact of his failure to deny are admissible," at trial.  Lynch v. Commonwealth, 272 Va. 204, 208, 630 S.E.2d 482, 484 (2006) (quoting Knight v. Commonwealth, 196 Va. 433, 436, 83 S.E.2d 738, 740 (1954)).  The admissibility of these adoptive admissions "as evidence of [the accused's] acquiescence in [their] truth, is based on the theory that the natural reaction of one accused of a crime is to deny the accusation if it is unjust or untrue."  Id.; see also Welch v. Commonwealth, 271 Va. 558, 564-65, 628 S.E.2d 340, 343 (2006).

For a statement to be admitted into evidence as an adoptive admission, the Commonwealth must demonstrate by a preponderance of the evidence (1) that the defendant heard the statements, (2) he understood that the statements implicated him in a crime, (3) he had a fair opportunity to deny or object to the statements, and (4) the circumstances would naturally call for a reply.  Lynch, 272 Va. at 208, 630 S.E.2d at 484; see Owens v. Commonwealth, 186 Va. 689, 699, 43 S.E.2d 895, 899 (1947).  A party can "manifest adoption of a statement made by another in any number of ways, including words, conduct, or silence."  Lynch, 272 Va. at 209, 630 S.E.2d at 485.  Oftentimes the "defendant's words or conduct . . . supply most, if not all, of the predicate facts" the Commonwealth must prove before the trial court admits the evidence under the adoptive admission exception to the hearsay rule.  Id.  "Factual questions

- 4 -

must usually be resolved to determine whether the proponent of the evidence has carried that burden, and those antecedent or predicate facts are to be determined by the trial court alone." Id. at 208, 530 S.E.2d at 484.

Here, two witnesses testified that Gregory was within arm's length of Futrell when he described Gregory's involvement in the robbery and murder. Gregory signaled he was ready to carry out the robbery when he pulled out a green bandanna and told Futrell to "get the shit over with." After the shooting, Gregory rummaged through the decedent's pockets for money. During Futrell's telling of the story, Gregory verbally and physically affirmed the veracity of Futrell's statements by nodding his head and interjecting with an affirmative, "yeah." The trial court found "sufficient evidence for the adoptive admission," and we agree. Gregory's words and conduct supply the predicate facts required to render both Spivey's and Williams's statements admissible under the adoptive admission exception to the hearsay rule.

## IV. Conclusion

The trial court did not err in permitting hearsay evidence under the adoptive admission exception to the hearsay rule and, thus, we affirm.

Affirmed.