COURT OF APPEALS OF VIRGINIA

Present: Judges Humphreys,[*] Huff and Athey

FRANCISCO CHARLES MCCLAIN

v.      Record No. 1440-22-1                          MEMORANDUM OPINION[**]
                                                              PER CURIAM
COMMONWEALTH OF VIRGINIA                              JANUARY 9, 2024

FROM THE CIRCUIT COURT OF THE CITY OF SUFFOLK
L. Wayne Farmer, Judge

(Sean P. Domer; Bush & Taylor, P.C., on brief), for appellant.
Appellant submitting on brief.

(Jason S. Miyares, Attorney General; Suzanne Seidel Richmond,
Assistant Attorney General, on brief), for appellee.


Francisco Charles McClain ("McClain") was convicted of intentionally possessing or

transporting a firearm as a violent felon, pursuant to Code § 18.2-308.2, and brandishing a

firearm, in violation of Code § 18.2-282.  McClain appeals, arguing that the trial court erred in

finding there was sufficient evidence to support his convictions.  After examining the briefs and

record in this case, the panel unanimously holds that oral argument is unnecessary because "the

appeal is wholly without merit."  Code § 17.1-403(ii)(a); Rule 5A:27(a).  Therefore, the judgment

of the trial court is affirmed.

---

[*] Judge Humphreys participated in the decision of this case prior to the effective date of his retirement on December 31, 2023.

[**] This opinion is not designated for publication.  *See* Code § 17.1-413(A).

## I. Background[1]

On the night of April 3, 2021, Nadaesha Powell ("Powell") and her sister drove to their uncle's house in Suffolk where Powell saw McClain, her "biological brother," come out of the house. He pointed a gun "directly in [her] direction" before saying "there goes those b's—there goes Nadaesha." Powell also saw McClain point the gun at his mother, who had come out of the house, before she and her sister drove away and dialed 911. The two sisters then waited in Powell's car about a block from their uncle's house until police arrived. Upon arrival, Suffolk Police Officer Gaines ("Officer Gaines") sought authorization to search the home, which Maurice McClain ("Maurice"), the owner of the residence, granted. Whereupon Officer Gaines "was directed to the bathroom" of the home where she found a handgun inside the bathroom vanity. There was also a matching handgun magazine lying on the floor beneath the vanity.

By this time, Suffolk Police Officers Aluia and Smith arrived, and Officer Aluia identified McClain from "his Virginia I.D. card" and read him his *Miranda*[2] rights which McClain indicated that he understood. "As a result of the investigation [McClain] was arrested." McClain admitted that he had been "in an argument with his sister" at the residence earlier that day but stated that "the firearm was not his" even though "he had handled that firearm a couple of days before."

At trial, Powell described McClain's firearm as "a dark gun," but not "big." Officer Gaines also identified the firearm from photographs of the gun and magazine found when she searched Maurice's home. In addition, McClain's brother, Fernando King ("King"), testified that he owned

---

[1] We recite the facts "in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). Doing so requires that we "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

the firearm that Officer Gaines found, explaining that he had the firearm "on [his] person until [he] went into the restroom," where he "placed [it] on the [bathroom] counter." King further testified that he left the firearm on the counter when he went to investigate some sort of commotion, but when he returned an hour or so later, the gun was gone.

Then McClain testified in his own defense, conceding that he "possibly could have" told the responding officers that his DNA would be on the gun, but that was because he had "accidentally touched" it while visiting his brother two days before the altercation at Maurice's home. McClain also acknowledged that King did not live with Maurice and that it was "fair to say that it's unusual that his firearm and its magazine would be found in a bathroom vanity on the floor" at Maurice's residence.

McClain further acknowledged that he placed phone calls to family and friends from the Western Tidewater Regional Jail where he was being held. The Commonwealth then played a recording of part of one such call, which McClain recognized as a telephone call to his mother. During the phone call McClain's mother asked him, "why would you pull out a gun on me?" McClain failed to deny doing so, responding only that "your daughter is trying to [ ] my life up right now." Asked why he did not deny pointing a gun at his mother or correct her about having a gun, McClain responded that he "was in [his] emotions at the time and [he] was denying what [he] was being incarcerated for at the time."

The Commonwealth also introduced the .40 caliber Taurus G2s semiautomatic pistol at issue into evidence as well as a certificate of analysis prepared by the Virginia Department of Forensic Science ("DFS") stating that the handgun was "[f]ound to be in mechanical operating condition and was test fired using the submitted magazine." The Commonwealth also submitted a previous sentencing order establishing that McClain had been convicted of three prior felonies. The trial court convicted McClain, who now appeals his convictions.

II. ANALYSIS

A. *Standard of Review*

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Id.* (alteration in original) (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan*, 72 Va. App. at 521 (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

B. *There was sufficient evidence for the trial court to find McClain to be a felon in possession of a firearm.[3]*

McClain asserts that the trial court erred in finding sufficient evidence to conclude that what Powell saw in his hand was a firearm or an object of similar appearance. We disagree.

Relevant to this appeal, it is "unlawful for any person who has been convicted of a felony . . . to knowingly and intentionally possess or transport any firearm." Code § 18.2-308.2. Under this statute, "the evidence need show only that a person subject to the provisions of that statute

---

[3] McClain's status as a felon is not at issue in this appeal. We focus solely on whether the evidence was sufficient to show McClain possessed a firearm.

- 4 -

possessed an instrument which was designed, made, and intended to expel a projectile by means of an explosion." *Armstrong v. Commonwealth*, 263 Va. 573, 584 (2002).

Here, the Commonwealth submitted into evidence the pistol that Officer Gaines found in the house where McClain was arrested, as well as a certificate of analysis from DFS stating that the weapon was in operational condition and had been test fired. Thus, the evidence established that the gun in question was, in fact, an operating firearm.

The evidence also was sufficient to support the trial court's conclusion that McClain possessed the firearm discovered by Officer Gaines. "While proximity . . . is a factor that may be considered" in determining whether McClain possessed the firearm entered into evidence, "it is insufficient alone to establish possession." *Coward v. Commonwealth*, 48 Va. App. 653, 657 (2006). But more than mere proximity connects McClain to the firearm.

McClain's brother testified that he left his firearm on the bathroom counter and that it was not where he left it when he later returned to retrieve it. McClain stated that he had handled the gun two days before his arrest. Given that the police had asked McClain whether they would find his DNA on the pistol, the trial court was "entitled to disbelieve th[is] self-serving" explanation and conclude instead that McClain was "lying to conceal his guilt" by providing an alternate, less culpable explanation for why his DNA might be present on the weapon. *Pergolizzi v. Bowman*, 76 Va. App. 310, 341 (2022) (quoting *Brown v. Commonwealth*, 75 Va. App. 388, 414 (2022)). Moreover, McClain tacitly admitted to possessing a firearm in the recorded jail call with his mother on the day after his arrest. When his mother confronted McClain about the pistol, asking why he had "pull[ed] out a gun on" her, McClain did not deny doing so. Since "[a] party may manifest adoption of a statement made by another in any number of ways, including words, conduct, or silence," *Lynch v. Commonwealth*, 272 Va. 204, 209 (2006), the trial court was well within its discretion to conclude that McClain adopted his

- 5 -

mother's statement thereby confessing to having "pulled" the gun in his possession on his mother.

Although none of these facts, taken in isolation, may have been sufficient *in and of themselves* to prove beyond a reasonable doubt that McClain was a felon in possession of a firearm at Maurice's house on the day of his arrest; "this Court does not view circumstantial evidence [on appeal] in isolation. Rather, the 'combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable mind irresistibly to a conclusion.'" *Lucas v. Commonwealth*, 75 Va. App. 334, 346-47 (2022) (quoting *Karnes v. Commonwealth*, 125 Va. 758, 764 (1919)). Thus, we find that the totality of both the direct and circumstantial evidence adduced here supports McClain's conviction of being a felon in possession of a firearm.

### C. *There was also sufficient evidence for the trial court to find McClain guilty of brandishing a firearm.*

McClain further contends that the trial court erred in denying his motion to strike because there was insufficient evidence to support convicting him of brandishing. We disagree.

In Virginia it is

> unlawful for any person to point, hold or brandish any firearm
> . . . or any object similar in appearance, whether capable of being
> fired or not, in such manner as to reasonably induce fear in the
> mind of another or hold a firearm . . . in a public place in such a
> manner as to reasonably induce fear in the mind of another of
> being shot or injured.

Code § 18.2-282. "There are two elements of th[is] offense: (1) pointing or brandishing a firearm [or object similar in appearance], and (2) doing so in such a manner as to reasonably induce fear in the mind of a victim." *Kelsoe v. Commonwealth*, 226 Va. 197, 198 (1983). "The gravamen of the offense is the inducement of fear in another." *Id.* at 199.

Powell testified that she was scared and that she and her sister "had to hurry up and leave" because McClain was pointing the gun at them. In *Kelsoe*, where the defendant "'pointed [a] pistol

toward' . . . three men," our Supreme Court held that the evidence was sufficient to sustain a conviction for brandishing where it established that the victims "[were] afraid and backed away from the defendant." *Id.* at 198-99. The facts in *Kelsoe* are analogous to those here, where Powell's perception of a gun caused her to feel fear, flee the scene, and remain a block away until the police arrived.

McClain also argues that Powell's description of the gun was insufficient, highlighting that she "could give no identification, no identifying characteristics of the firearm, or anything of that nature" other than "[i]t was dark." In his motion to strike, McClain attempted to discredit Powell's description of the gun by arguing that because the pistol's polymer frame was tan, it was "not necessarily a completely dark firearm for purposes that she couldn't identify any characteristic of it." However, both our precedents and those of our Supreme Court establish that a rational factfinder here could have reasonably found Powell's testimony sufficient to identify the firearm.

In *Startin v. Commonwealth*, 281 Va. 374, 376-77 (2011), our Supreme Court upheld the conviction of an appellant for "use or display of a firearm in the commission of a felony under Code § 18.2-53.1" finding the description of the firearm as "a black older model handgun" was sufficient to prove the item was a firearm even though the victim "could not state whether it was a revolver or a pistol." And in *Redd v. Commonwealth*, 29 Va. App. 256, 259 (1999), we again upheld the appellant's conviction for possession of a firearm by a previously convicted felon, finding the description of a firearm as only "a long black gun," coupled with the defendant's threat to kill the victim, sufficient.[4] Although neither *Startin* nor *Redd* involved convictions for brandishing a firearm, they are nonetheless instructive here insofar as they establish that when a victim is

---

[4] McClain's line of attack is also undermined by his own concession that the gun was "not a revolver or anything like that that would have had a distinctive characteristic"—which is to say, that the gun was nondescript. It is unsurprising that Powell would have trouble describing in detail a *nondescript* firearm.

confronted with an armed aggressor, as Powell was here, the victim's description of the firearm need not be unduly detailed to be sufficient.

It is clear that the trial court here gave McClain's criticism of Powell's description of the brandished firearm little weight: "Much was made of the fact that she didn't describe the firearm," the court observed. "She said it was a handgun. It wasn't a long gun. Again, unless someone is familiar with firearms[,] I'm not sure how much beyond that we expect them to know." Whatever the shortcomings in Powell's description of McClain's weapon, "any gaps in the evidence are relevant to the trier of fact's assessment of its weight." *Church v. Commonwealth*, 71 Va. App. 107, 122 (2019). This axiom is particularly true here where other evidence in the record supports the conclusion that McClain possessed a firearm. Thus, "[i]n light of the totality of the circumstances" a rational factfinder could have credited Powell's description of the firearm as sufficient. *Huffman v. Commonwealth*, 51 Va. App. 469, 473 (2008).

For brandishing, "[t]he gravamen of the offense is the inducement of fear in another." *Kelsoe*, 226 Va. at 199. What the "victim reasonably perceives" is a key factor for the trial court's consideration in ascertaining whether a defendant has brandished an instrument sufficiently similar in appearance to a firearm to sustain a conviction. *Armstrong v. Commonwealth*, 36 Va. App. 312, 317 n.4 (2001) (quoting *Holloman v. Commonwealth*, 221 Va. 196, 199 (1980)), *aff'd*, 263 Va. 573 (2002). Thus, the evidence adduced at trial here was sufficient to convince a rational factfinder that Powell was "reasonably apprehensive of bodily harm induced by [McClain] brandishing the gun" at her. *Huffman*, 51 Va. App. at 473.

"When a defendant challenges on appeal the sufficiency of the evidence to sustain his conviction, the appellate court has a duty to examine all the evidence that tends to support the conviction." *Bolden v. Commonwealth*, 275 Va. 144, 147 (2008). There being substantial additional supporting evidence present here, including King's testimony that his firearm was

missing from the bathroom counter at Maurice's house on the day of McClain's arrest, and McClain's tacit admission that he had pointed a gun at his mother at Maurice's house that day, we find the evidence sufficient to sustain the convictions.

### III. CONCLUSION

Since, the record contains sufficient evidence supporting the trial court's judgment, we affirm the convictions.

*Affirmed.*