### Richmond

## JOHN VERN COOK, JR.

### V.

## COMMONWEALTH OF VIRGINIA

January 12, 1979.

Record No. 780250.

Present: All the Justices.

John W. Carter *(Carter and Wilson*, on brief), for appellant.

Thomas D. Bagwell, *Assistant Attorney General (Marshall Coleman, Attorney General*, on brief), for appellee.

HARMAN, J., delivered the opinion of the Court.

John Vern Cook, Jr. (Cook or defendant), who waived trial by jury, was convicted by the court below of voluntary manslaughter of Luther Boswell. In light of the mitigating circumstances disclosed by the evidence and defendant's prior good reputation, the trial court suspended imposition of sentence and placed Cook on supervised probation.

We granted a writ of error to review defendant's challenge to the sufficiency of the evidence to sustain his conviction. Cook argues that the evidence at trial was deficient in two respects, namely:

(1) the evidence failed to establish that defendant used more force than was reasonably necessary to repel an attack on defendant by the decedent; and

(2) the evidence failed to show, beyond a reasonable doubt, any causal connection between the injuries inflicted on the deceased by defendant on August 1, 1977, and the deceased's subsequent death on August 19.

When the sufficiency of the evidence is challenged after conviction, it is our duty to consider it in the light most favorable to the Commonwealth and give it all reasonable inferences fairly deducible therefrom. We should affirm the judgment unless it appears from the evidence that the judgment is plainly wrong or without evidence to support it. *Higginbotham* v. *Commonwealth*, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975).

█ Viewed in light of these principles, the record shows that the deceased, who had been drinking intoxicating beverages, and defendant engaged in an argument at the home of defendant's mother, Ann Cook, on August 1, 1977. As this argument progressed, it became more heated. Both defendant and his mother testified that the deceased grabbed the front of defendant's shirt and struck defendant on the arm. Defendant retaliated by striking Boswell several times with his fist about the head and face.

Immediately after this altercation Boswell's face began to discolor and swell. Within a short time Boswell's face became badly swollen. Defendant and his mother applied an ice pack to Boswell's injuries but Boswell refused defendant's offer to assist in obtaining medical attention. Boswell, who continued to refuse medical attention, remained at Ann Cook's home, attended by Mrs. Cook, until the early morning hours of August 3. Boswell's daughter, granddaughter and son-in-law visited Boswell and observed his condition on Tuesday, August 2. On that occasion Mrs. Cook told Boswell's daughter that defendant struck Boswell only three times. She also said that Boswell was badly bruised because defendant was wearing his class ring. Around 5:30 A.M. on August 3, Mrs. Cook called Boswell's son-in-law and told him that Boswell was not responding to her care. A rescue squad ambulance was called and Boswell was transported to a hospital. Upon his arrival there, Boswell was lethargic and hard to arouse. He had contusions "all over the face, part of the chest, the abdomen and the right lower leg", and his eyes were "partially closed" because of facial swelling. When tests showed Boswell had a blood clot in the right temporal lobe of his brain, surgery was performed to remove the clot. Boswell never regained consciousness and died on August 19.

Until about two years before the altercation between Boswell and defendant, Boswell and defendant's mother had resided together intermittently for several years in a meretricious relationship at Ann Cook's home in Danville. Mrs. Cook testified that she attempted to terminate this relationship and had, on numerous occasions during the two year period, told Boswell not to come to her home or to attempt to see her. She related that Boswell refused to surrender keys to her home and car and continued to come to her home and to use her car in spite of her contrary wishes.

Mrs. Cook described Boswell as a heavy drinker who was very possessive, harsh and abrupt. When "drinking", Boswell frequently became violent and aggressive. Mrs. Cook's evidence in this respect was not challenged.

Mrs. Cook also testified that Boswell, while attempting to go to the bathroom early Wednesday morning, August 3, fell and struck his head against a bed and the hardwood floor in the bedroom.

Defendant, who was 22 years of age, married and residing in his own home, was aware of his mother's desire to terminate her relationship with Boswell. He had spoken to Boswell on several occasions preceding the altercation, requesting that Boswell stay away from Mrs. Cook's residence unless invited there by Mrs. Cook. Defendant testified that he was afraid of Boswell and was aware of Boswell's reputation as a violent and aggressive person. He also knew that Boswell had committed an unlawful violent homicide in Roanoke County in 1968 or 1969. Defendant testified that Boswell had threatened him with harm on several occasions.

Boswell was 62 years of age and weighed approximately 230 pounds. He had suffered from hypertension (high blood pressure) for more than two years prior to his death and had an advanced case of cirrhosis, a progressive liver disease. The medical evidence shows that one who suffers from cirrhosis is susceptible to more than normal bleeding, bruising and swelling because one of the side effects of the disease is to reduce the ability of the blood to coagulate.

Ronald D. Pruitt, a member of the rescue squad which transported Boswell to the hospital, testified that Boswell was "badly beaten", "[h]is face was bruised very much, it had dried blood on it, swollen severely." When Pruitt asked how Boswell sustained his injuries, Mrs. Cook responded that Boswell "had been beaten by her son."

Detective J. W. Martin, Jr., of the Danville Police Department, testified that he went to the Ann Cook residence on Wednesday, August 3, to interview Mrs. Cook. During this interview defendant, who was also present, told Detective Martin that he would like to tell him "what happened". After being advised of his *Miranda* rights, defendant told the detective that he and Boswell, who was drinking heavily, "got into an argument and [Boswell] tried to hit [defendant]; [defendant] lost his temper severely and struck [Boswell] five times." Defendant also said "after he struck [Boswell] he noticed that [Boswell's] face swelled up severely and that he became unconscious and was snoring as if he was asleep." Later in the same conversation defendant said "he knew that he had lost his temper and when he struck [Boswell] he knew he had done wrong." Detective Martin also testified that Mrs. Cook told him that Boswell had fallen while attempting to go to the bathroom

around 2:30 A.M. on Tuesday, August 2, not on Wednesday, August 3, as she had testified at trial.

Dr. David W. Oxley, Deputy Chief Medical Examiner for Western Virginia, testified that he performed an autopsy on Boswell's body the day after his death. Oxley's examination revealed several small "discreet" bruises on the left cheek and a large bruise on the right cheekbone. Dr. Oxley also observed a large bruise on the right upper front of the shoulder, another large bruise on the upper left abdomen at the margin of the rib cage and still another "fading purplish" bruise on the front part of the right lower leg. There were no fractures present in the ribs, vertebrae or skull. Examination of the liver revealed cirrhosis of "fairly long standing". When the head was opened, Dr. Oxley found the brain to be "quite swollen". He examined the area where an intracerebral blood clot had been evacuated by surgery, and found evidence of new bleeding.

Dr. Oxley was of opinion that the bruises on the cheeks were caused by "repeated blows to the area of the face rather than a fall" and that Boswell's death was caused by "multiple blunt force injuries to the head with intracranial and cerebral contusions and hemorrhage, terminally complicated by liver failure." On cross-examination, Dr. Oxley testified that it was not unusual for trauma of the type sustained by Boswell to cause an intracerebral hemorrhage.

With this evidence in mind, we will now deal with defendant's first argument, that the evidence failed to show defendant used excessive force to repel an attack by the deceased.

Recognizing the well-established principle that one assaulted may use only such force as appears to him reasonably necessary to repel the attack, defendant argues that evidence disclosing that, when attacked, he "struck the deceased some 3 to 5 times very quickly with his fists", was insufficient to establish the use of excessive force. He further argues that Boswell's appearance and his battered condition were explained by Boswell's subsequent fall and the medical evidence which showed that Boswell, suffering from advanced cirrhosis, would bruise more easily and swell more readily than a normal person sustaining the same trauma.

While this evidence was relevant and could be properly considered by the trial court, the court was not required to give full credit to the evidence or defendant's interpretation of it. This is particularly so in view of the other evidence showing Boswell's battered condition and the expert opinion that his injuries were not

caused by a fall, but by repeated blows about the face. In addition there were defendant's statements that he "lost his temper severely" and "when he struck [Boswell] he knew he had done wrong." Most certainly, his mother's testimony at trial concerning Boswell's condition after the altercation and that his condition markedly changed after his subsequent fall is not consistent with her statement to Pruitt, the ambulance attendant, that Boswell's injuries were sustained when he was "beaten by her son".

Upon consideration of all the evidence, we find no error in the trial court's finding that defendant used excessive force to repel Boswell's attack.

▇ This brings us to the second point advanced by defendant, that the evidence failed to show, beyond a reasonable doubt, any causal connection between the injuries inflicted by defendant and Boswell's subsequent death.

While the medical evidence on this issue was not without conflict, the evidence of Dr. Oxley, set forth above, supports a finding of the necessary causal connection. Since there is credible evidence to sustain its holding, the trial court did not err in this respect, so the judgment of the trial court will be affirmed.

*Affirmed.*