**Salem**

JAMES EDWARD CRAIG

v.

COMMONWEALTH OF VIRGINIA

No. 0708-91-3

Decided July 14, 1992

COUNSEL

Sam D. Eggleston III, for appellant.

Oliver L. Norrell, III, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

## OPINION

**DUFF, J.**—This appeal presents issues of evidentiary rulings in appellant's trial for malicious wounding and the use of a firearm in the commission of a felony. Appellant, James Edward Craig, contends that the trial court erred in not allowing him to question the victim regarding previous acts of violence against a third person when appellant was relying on a plea of self-defense. He argues that such evidence would have explained his apprehension of the victim and his belief of imminent danger. We agree that the trial court erred in excluding the evidence and reverse the convictions.

On March 31, 1990, Craig arrived home to find his brother-in-law, J. B. Walton, preparing to replace the tires and rims on a vehicle that had been given to Craig by Walton's mother. The gift had been conditioned on the return of the existing tires and rims to the donor and Walton arrived with the replacement tires and rims. Upon inspection, Craig announced that the replacement tires and rims were unsatisfactory and that he did not want them on his car. An argument ensued between Craig and Walton over the suitability of the tires and rims. Both men had been drinking. The evidence further showed that Craig's wife, Annette, who was Walton's sister, saw Walton strike Craig. Craig's children were also present at the scene. Walton cursed Craig and threatened to kill him. When Annette attempted to persuade her brother to leave, he struck her and knocked her down, cutting her face. Craig then took his children into the house and returned with a shotgun. Walton then went to his car and, according to Craig, reached under the seat and came back toward Craig with his hand behind him. At this point, Craig shot Walton in the knee from a distance of approximately thirty-five feet.

During the Commonwealth's case in chief, Walton denied striking Annette Craig. On cross-examination, defense counsel attempted to inquire about prior incidents where Walton had physically abused Mrs. Craig. The Commonwealth's objection on the grounds of relevancy was sustained. The court ruled, "[t]hat has nothing to do with this." Craig made no proffer of the expected

testimony. By excluding evidence of prior acts as irrelevant, the trial court essentially ruled that acts of violence against third parties were inadmissible to show Craig's apprehension of Walton and his belief that Walton posed an immediate threat to him. Craig argues that this position is contrary to the Supreme Court's holding in *Burford v. Commonwealth*, 179 Va. 752, 20 S.E.2d 509 (1942), where evidence of specific acts of violence against third parties was held to be admissible to show fear by a defendant, who had pled self defense. We agree.

However, *Burford* also specified that "[s]uch evidence is admissible only . . . when a proper foundation is laid by proof of some overt act justifying such defense." 179 Va. at 767, 20 S.E.2d at 515. Craig argues that at the time he sought to cross-examine Walton on this issue, Walton's testimony on direct examination had already produced evidence of such overt action. Walton testified that he got out of his car and advanced toward Craig for five or six feet. Craig argues that Walton's advance with one hand behind his back, combined with Walton's prior threat to kill him, provided a proper foundation to question Walton regarding prior violence toward Craig's wife. While walking toward someone for five or six feet without a visible weapon may not in itself satisfy the *Burford* test, the nature and quality of an overt act cannot be judged in a vacuum. Rather, the acts must be viewed through the eyes of the person allegedly threatened.

Craig testified that Walton had threatened to kill him, cursed at him and had gone to his car, where he reached "up under his seat." Walton then advanced toward Craig and told him "not to hurt my sister." Craig testified that he "thought he [Walton] was going to blow me away like he said he was going to do." We hold that, from Craig's perspective, there was a sufficient showing of an overt act by Walton to admit the excluded evidence.

■ The Commonwealth argues that any error in failing to allow cross-examination of Walton concerning prior incidents of violence was cured by Craig's own testimony that such incidents had occurred. However, Craig's testimony was impeached by the Commonwealth. Evidence was presented showing Craig's consumption of alcohol and his prior felony conviction. Craig asserts that this impeachment discredited his own testimony and reduced its effectiveness. An actual admission by Walton would have had far greater credibility and impact. When evidence of prior acts of

violence against third parties is admissible, a defendant is entitled to present such evidence in the most tactically advantageous manner.

Finally, we find that Craig's failure to proffer the anticipated evidence does not bar our consideration of its admissibility under the peculiar facts contained in this record. Generally, a proffer is required so that an appellate court may determine whether the aggrieved party has been prejudiced by the trial court's ruling. In the case before us, however, the nature of Walton's response to the question was not critical. If Walton admitted the acts of violence under cross-examination, Craig's purpose would have been accomplished. If Walton denied the acts, his testimony would have been subject to impeachment by other evidence. Either way, the impact of Walton's testimony concerning such incidents would have been far more effective than self-serving testimony by Craig, a witness who had already been impeached.

We conclude that in support of his claim of self-defense, Craig had the right to show through cross-examination that Walton was a man of violence. Because of the court's ruling, Craig was prevented from proving the basis of his fear of Walton.

Accordingly, the conviction is reversed and the case remanded for a new trial if the Commonwealth be so advised.

*Reversed and remanded.*

Barrow, J., and Benton, J., concurred.