# VIRGINIA:

*In the Court of Appeals of Virginia on* **Tuesday** *the* **25th** *day of* **October, 2011**.

Sebastian Cortez Hernandez, s/k/a
  Sebastian Cortes-Hernandez,                                                              Appellant,

 against                    Record No. 0458-10-4
                            Circuit Court Nos. CR05071950-00 and CR05071951-00

Commonwealth of Virginia,                                                                  Appellee.


Upon a Rehearing En Banc

Before Chief Judge Felton, Judges Elder, Frank, Humphreys, Kelsey,
Haley, Petty, Beales and Huff

Christopher D. Feldmann (Irving & Irving, P.C., on briefs,) for
appellant.

Virginia B. Theisen, Senior Assistant Attorney General
(Kenneth T. Cuccinelli, II, Attorney General; Richard B. Smith,
Special Assistant Attorney General, on brief), for appellee.


By opinion dated April 5, 2011, a panel of this Court affirmed the judgment of the trial court.

See Cortez-Hernandez v. Commonwealth, 58 Va. App. 66, 706 S.E.2d 893 (2011). We, thereafter,

granted appellant's petition for rehearing *en banc*, stayed the mandate of the panel decision, and

reinstated the appeal on the docket of this Court.

Upon such rehearing *en banc*, the stay of this Court's April 5, 2011 mandate is lifted, and the

judgment of the trial court is affirmed for the reasons stated in the panel's majority opinion.[1]

---

[1] In his petition for appeal, Cortez-Hernandez asserted that the trial court abused its discretion
when it denied him the opportunity for re-cross-examination of a Commonwealth's witness concerning
matters brought out for the first time on re-direct examination of the witness by the prosecutor. The
panel majority, although assuming without deciding that the trial court had erred, did not further reach
the merits of Cortez-Hernandez's assignment of error, finding that Cortez-Hernandez's failure to proffer
the questions he would have asked prevented this Court from determining whether any error was
harmless. However, in his petition for rehearing *en banc*, Cortez-Hernandez improperly recast his
assignments of error. We do not address Cortez-Hernandez's modified assignments of error presented

Chief Judge Felton, Judges Frank, Humphreys, Kelsey, Petty, and Huff voted to affirm the judgment of the trial court in accordance with the majority opinion of the panel.

Judges Elder, Haley, and Beales voted to reverse the judgment of the trial court for the reasons stated in the panel's concurrence/dissent.

It is ordered that the trial court allow counsel for the appellant an additional fee of $200 for services rendered the appellant on the rehearing portion of this appeal, in addition to counsel's costs and necessary direct out-of-pocket expenses. This amount shall be added to the costs due the Commonwealth in the April 5, 2011 mandate.

This order shall be published and certified to the trial court.

A Copy,

Teste:

Cynthia L. McCoy, Clerk

*original order signed by a deputy clerk of the*
By:  *Court of Appeals of Virginia at the direction*
*of the Court*

Deputy Clerk

---

in his petition for rehearing *en banc*, inasmuch as counsel may not substantively alter his assignments of error *en banc* from those originally granted for appeal without leave of Court. See Rule 5A:12(c) ("Only assignments of error assigned in the petition for appeal will be noticed by this Court."); see also Dowdy v. Commonwealth, 278 Va. 577, 590 n.14, 686 S.E.2d 710, 717 n.14 (2009) (It is improper for an appellant to substantively alter an assignment of error from that stated in his petition for appeal.).

We also note Cortez-Hernandez has abandoned his assertion that the trial court erred in refusing to grant his proposed jury instruction on voluntary manslaughter, only asserting in his petition for rehearing *en banc* that the panel opinion "misconstrued the factual record in determining that the trial court properly refused an excusable self-defense instruction." His assignment of error that the trial court erred in refusing to give a voluntary manslaughter instruction is, thus, not reviewable by this Court *en banc* and the trial court's decision to refuse a voluntary manslaughter instruction remains undisturbed for the reasons stated in the panel opinion. See Ferguson v. Commonwealth, 51 Va. App. 427, 433, 658 S.E.2d 692, 695 (2008) ("The grant of *en banc* review vacates the prior panel opinion *in toto*," rendering the former judgment a nullity and "void[s] the decision of the panel as to the issues before this Court *en banc*."). We are, thus, limited to the assignments of error originally granted for appeal that were also presented in Cortez-Hernandez's petition for rehearing *en banc*. Id. The issue of whether the trial court erred in refusing a jury instruction on voluntary manslaughter is, therefore, not before us, and we therefore reinstate the holding and judgment of the panel opinion on that particular issue as well. Id.

-2-

# *VIRGINIA:*

*In the Court of Appeals of Virginia on* **Tuesday** *the* **17th** *day of* **May, 2011**.

Sebastian Cortez Hernandez, s/k/a
  Sebastian Cortes-Hernandez,                                                    Appellant,

 against          Record No. 0458-10-4
                  Circuit Court Nos. CR05071950-00 and CR05071951-00

Commonwealth of Virginia,                                                    Appellee.


Upon a Petition for Rehearing En Banc

Before Chief Judge Felton, Judges Elder, Frank, Humphreys, Kelsey, McClanahan, Haley, Petty, Beales, and Powell

On April 19, 2011 came the appellant, by court-appointed counsel, and filed a petition requesting that the Court set aside the judgment rendered herein on April 5, 2011, and grant a rehearing *en banc* on the issue(s) raised in the petition.

On consideration whereof, the petition for rehearing *en banc* is granted with regard to the issue(s) raised therein, the mandate entered herein on April 5, 2011 is stayed pending the decision of the Court *en banc*, and the appeal is reinstated on the docket of this Court.

The parties shall file briefs in compliance with Rule 5A:35(b).  The appellant shall attach as an addendum to the opening brief upon rehearing *en banc* a copy of the opinion previously rendered by the Court in this matter.  It is further ordered that the appellant shall file twelve additional copies of the appendix previously filed in this case.  In addition, any party represented by counsel shall file twelve electronic copies of their brief (and the appendix, if the party filing the appendix is represented by

counsel) with the clerk of this Court.  The electronic copies must be filed on twelve separate CDs or

DVDs and must be filed in Adobe Acrobat Portable Document Format (PDF).[1]

A Copy,

Teste:

Cynthia L. McCoy, Clerk

By: *original order signed by a deputy clerk of the Court of Appeals of Virginia at the direction of the Court*

Deputy Clerk

---

[1] The guidelines for the creation and submission of a digital brief package can be found at www.courts.state.va.us, in the Court of Appeals section under "Resources and Reference Materials."

Present:   Judges Humphreys, Haley and Senior Judge Annunziata
Argued at Alexandria, Virginia


SEBASTIAN CORTEZ-HERNANDEZ, S/K/A
  SEBASTIAN CORTES-HERNANDEZ
                                                            OPINION BY
v.        Record No.  0458-10-4                  JUDGE ROBERT J. HUMPHREYS
                                                            APRIL 5, 2011
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF PRINCE WILLIAM COUNTY
Lon E. Farris, Judge

Christopher Feldmann (Irving & Irving, P.C., on briefs), for
appellant.

Richard B. Smith, Special Assistant Attorney General (Kenneth T.
Cuccinelli, II, Attorney General, on brief), for appellee.


        Sebastian Cortez-Hernandez ("Cortez-Hernandez") appeals his convictions in the Circuit

Court of Prince William County ("trial court") on one count of first-degree murder, in violation

of Code § 18.2-32, and one count of use of a firearm in the commission of a felony, in violation

of Code § 18.2-53.1.  Cortez-Hernandez asserts the trial court erred in refusing him the

opportunity to re-cross-examine a prosecution witness after the Commonwealth's re-direct

examination of that witness.  Cortez-Hernandez also alleges the trial court erred in refusing to

grant jury instructions on excusable self-defense and voluntary manslaughter.  For the following

reasons, we affirm the trial court.

I. Background

        During the second week of May 2008, Omar Vasquez ("Omar") got into a fistfight with

Santos Ontiveros ("Santos").  After besting Santos, Omar went into El Mexicano Restaurant in

the Georgetown South Shopping Center to wait for his brother, Ruben, to pick him up.  When

Ruben arrived, the two drove off toward Omar's residence in the Georgetown South housing community ("Georgetown South"). Before they got to Omar's residence, however, Cortez-Hernandez, Santos, and another individual intercepted them by standing in front of their vehicle, blocking the street. As Omar and Ruben exited the vehicle, Omar got punched in the face. A fight ensued, and Omar was beaten "pretty badly."

A few weeks later, on May 31, 2008, Cortez-Hernandez and Santos dined with a group of friends at El Mexicano Restaurant in the Georgetown South Shopping Center. At the same time, Omar congregated with his cousin and friends in front of Mike's Quick Mart, also in the Georgetown South Shopping Center. They planned to dine at El Mexicano Restaurant, but when Omar realized the individuals from the previous altercation were inside, he called Ruben to pick them up.

When Cortez-Hernandez found out Omar and his friends were outside, he called a friend to bring him a gun. When the friend arrived, Cortez-Hernandez stashed the .45 caliber gun in his pants. Shortly thereafter, he and his friends exited the restaurant and proceeded down the sidewalk past Omar and his companions, down Grant Avenue and toward Georgetown South. Omar and his friends, also residents at Georgetown South, decided to walk home in the same direction. Along the way, Omar picked up a stick and gave it to his brother, Ruben. When they reached Grant Avenue, Santos came from behind Omar and punched him in the nose. Omar grabbed his face as blood poured out of his nose. Ruben hit Santos with the stick before Santos could hit Omar a second time. Santos ran toward his group, comprised of nine individuals, and one of them responded by charging toward Omar and Ruben with a knife. Ruben again raised the stick to ward him off.

At that point, Cortez-Hernandez positioned himself behind a large tree in a nearby yard and took out his gun. All of a sudden, he lifted up his shirt, yelled, "Que vale mierdas,"[1] then fired four shots, hitting Omar twice. Ruben called 911 and waited for help while Cortez-Hernandez and his friends fled. Paramedics arrived and announced Omar dead at the scene. The autopsy revealed that Omar had been shot twice, and the kill shot had traveled through his lung, heart, aorta, esophagus and vertebra before lodging in his lower left back. The bullets found in Omar's body were traced to Cortez-Hernandez's .45 caliber gun, and Omar's blood was found "ten to fifteen feet" from the tree behind which Cortez-Hernandez had been standing during the altercation.

Cortez-Hernandez was indicted and tried by a jury for first-degree murder and use of a firearm during the commission of a felony. Hermenjildo Rivera ("Rivera"), an eyewitness and friend of the decedent, testified during the Commonwealth's case-in-chief. During re-direct examination, the Commonwealth asked Rivera for the first time about the fight and the shooting. Defense counsel objected, arguing the Commonwealth exceeded the scope of direct and cross. The Commonwealth offered to "relieve [Rivera] and re-call him back." Without comment, the trial court said, "I overrule the objection." The Commonwealth proceeded to ask Rivera details about the shooting. Rivera corroborated the fact that Ruben hit Santos with the stick after Santos punched Omar in the face. Rivera also testified that Omar did not have a weapon, and Rivera did not see Omar hit anyone prior to the shooting. Rivera explained,

> [Cortez-Hernandez] went up to the yard, and when he said that phrase, "que vale mierda," he took out the gun and he pointed the gun, and it was some seconds – he took out the gun and he started to move around like this (indicating), and he said that it was no vale mierda, and he fired it. A few seconds went by, and he took it up again and he fired again.

---

[1] There is some dispute in the record concerning the appropriate translation of this phrase. It was translated several ways in the transcript: "Who's the next motherfucker?" (App. 211); "to not be worth shit," (App. 458); and "I'm going to finish you up," (App. 458).

Rivera responded, "no," when asked whether anyone in Omar's group had gotten into a physical fight with Cortez-Hernandez.

As the Commonwealth concluded its re-direct, defense counsel made some indication, the nature of which is unclear from the record, to which the court responded, "No." Defense counsel then requested and received a bench conference in which the following discussion took place:

> MS. IRVING [Defense counsel]: At the time that Ms. Millette started her direct examination, she never talked about the actual shooting. She only talked about when they were outside of Mike's, walking, waiting until the Defendant and his friends had passed, and that's where her cross -- her direct ended.
>
> THE COURT: Then you should have objected. I do not allow recross.
>
> MS. IRVING: Judge, I did object. If I can --
>
> THE COURT: You did object, and then she went in -- you objected before it went into the shooting. After the shooting you did not object.
>
> MS. IRVING: If I may just make my record clear, then. I objected when I thought she exceeded my scope. She mentioned that she could call him again, at which the point the Court --
>
> THE COURT: Overruled your objection.
>
> MS. IRVING: -- overruled the objection. And I was under the impression that instead of having her call him again one more time that she could continue going because I thought she had exceeded the scope.
>
> THE COURT: No. I overruled the objection, you did not object again, so the objection is noted. You cannot go recross. Thank you. You may step back.
>
> MS. IRVING: Please note my exception. Thank you, sir.

Following this exchange, Cortez-Hernandez's attorney did not seek an additional opportunity to re-cross Rivera or otherwise proffer for the record the questions she would have asked Rivera or the expected answers.

Cortez-Hernandez later took the stand in his own defense. He testified that when he learned Omar and two friends were outside the restaurant, he got nervous so he called a friend to bring him a gun. After he left El Mexicano, he didn't realize there was any trouble until Santos "passed me running . . . holding his head . . . ." At that point, Cortez-Hernandez turned around and saw one of Omar's friends approaching him with a stick. He testified that he raised his hands for protection and the man hit his hands with the stick. Cortez-Hernandez then "ran behind a tree."

Although Cortez-Hernandez's group outnumbered Omar's group nine to four, Cortez-Hernandez claimed eight people surrounded him, causing him to tremble with fear and feel like he could lose "my life right then and there." He testified the group was only about five feet away from him. Cortez-Hernandez testified he pulled out his gun to scare Omar's group off, but when they didn't back off, he shot toward the ground. Two of the bullets hit Omar, even though Cortez-Hernandez maintained he never aimed at anyone. Cortez-Hernandez admitted Omar was not the individual who hit him that evening, nor did he ever see Omar with any weapons. After he fired the rounds, Cortez-Hernandez did not stop to see whether he had hit anyone. Instead, he fled the scene and stashed the weapon at a friend's residence nearby.

At the conclusion of the evidence, Cortez-Hernandez proffered model jury instructions on excusable self-defense and voluntary manslaughter. The trial court refused both instructions finding they were inapplicable to the facts presented at trial. Instead, the court instructed the jury on justifiable self-defense, and first and second-degree murder.

The jury found Cortez-Hernandez guilty of both first-degree murder and use of a firearm during the commission of a felony, and fixed his sentence at 63 years imprisonment. The trial court entered final judgment on March 9, 2010. Cortez-Hernandez noted this appeal.

II  Analysis

A.  Trial Court's Refusal to Allow Re-Cross-Examination

Cortez-Hernandez first contends the trial court erred in refusing to allow him the right to re-cross-examine a prosecution witness, Hermenjildo Rivera, after the Commonwealth brought out new information on re-direct.  Cortez-Hernandez specifically alleges the trial court erred in not allowing him re-cross-examination concerning matters brought out for the first time on Rivera's re-direct by the prosecutor.  The Commonwealth agrees the trial court erred in refusing to allow re-cross-examination of Rivera, but asserts the error is "not reversible error" because Cortez-Hernandez failed to proffer the questions he would have asked Rivera on re-cross and the expected answers.  We do not address the merits of this assignment of error because it is not properly preserved for appeal.

Rule 5A:18 provided that "[n]o ruling of the trial court . . . will be considered as a basis for reversal unless the objection was stated together with the grounds therefor at the time of the ruling."[2]  The rule requires that "[i]n order to preserve an issue for appeal, 'an objection must be timely made and the grounds stated with specificity.'"  McDuffie v. Commonwealth, 49 Va. App. 170, 177, 638 S.E.2d 139, 142 (2006) (quoting Marlowe v. Commonwealth, 2 Va. App. 619, 621, 347 S.E.2d 167, 168 (1986)).  "To be timely, an objection must be made when the occasion arises -- at the time the evidence is offered or the statement made."  Marlowe, 2 Va. App. at 621, 347 S.E.2d at 168 (citation omitted).  "The purpose of the rule is to ensure that any perceived error by the trial court is 'promptly brought to the attention of the trial court with

---

[2] Effective July 1, 2010, Rule 5A:18 was revised to state that "[n]o ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling . . . ."  Because the proceedings below were completed prior to this revision taking effect, we will rely on the language of Rule 5A:18 that was then in effect.  See Fails v. Va. State Bar, 265 Va. 3, 5 n.1, 574 S.E.2d 530, 531 n.1 (2003) (applying the Rule of Court in effect at the time of the proceedings below).

- 6 -

sufficient specificity that the alleged error can be dealt with and timely addressed and corrected when necessary.'" Wood v. Commonwealth, 57 Va. App. 286, 303, 701 S.E.2d 810, 818 (2010) (quoting Brown v. Commonwealth, 8 Va. App. 126, 131, 380 S.E.2d 8, 10 (1989)). "If a party fails to timely and specifically object, she waives her argument on appeal." Id. (citing Arrington v. Commonwealth, 53 Va. App. 635, 641, 674 S.E.2d 554, 557 (2009)).

Moreover, "[i]n Virginia, when 'testimony is rejected before it is delivered, an appellate court has no basis for adjudication unless the record reflects a proper proffer.'" Ray v. Commonwealth, 55 Va. App. 647, 649, 688 S.E.2d 879, 880 (2010) (quoting Whittaker v. Commonwealth, 217 Va. 966, 968, 234 S.E.2d 79, 81 (1977)). "'When an appellant claims a trial court abused its discretion in excluding evidence, we cannot competently determine error -- much less reversible error -- without a proper showing of what that testimony would have been.'" Id. (quoting Tynes v. Commonwealth, 49 Va. App. 17, 21, 635 S.E.2d 688, 689 (2006)). "Though sometimes thought of as a mere waiver principle, the proffer requirement serves the higher purpose of safeguarding our duty under Code § 8.01-678[3] to reverse only when the trial court error actually prejudiced the defense." Id. at 650, 688 S.E.2d at 881 (citing Kirby v. Commonwealth, 50 Va. App. 691, 698-99, 653 S.E.2d 600, 603-04 (2007)). Thus,

> Absent a proffer showing harm was done, we are forbidden to consider the question . . . . This is because a proffer allows us to examine both the admissibility of the proposed testimony, and whether, even if admissible, its exclusion prejudiced the proffering party . . . . We can perform this examination only when the proponent proffers the testimony he expected to elicit, rather than merely his theory of the case.

---

[3] Code § 8.01-678 provides,

> [w]hen it plainly appears from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached, no judgment shall be arrested or reversed . . . [f]or any other defect, imperfection, or omission in the record, or for any error committed on the trial.

Id. (quotations and citations omitted).  Indeed, "even when 'we are not totally in the dark concerning the nature of the evidence,' we still must 'know enough about the specifics' to be able to 'say with assurance' that the lower court committed prejudicial error."  Tynes, 49 Va. App. at 22, 635 S.E.2d at 690 (quoting Smith v. Hylton, 14 Va. App. 354, 358, 416 S.E.2d 712, 715 (1992)).

As the Commonwealth correctly notes, these general principles apply to testimony excluded on cross-examination.  See, e.g., Spencer v. Commonwealth, 238 Va. 295, 305, 384 S.E.2d 785, 792 (1989) ("Spencer contends that the trial court limited his cross-examination of Dr. Roberts on this point.  Because Spencer failed to proffer the questions he wanted to ask Dr. Roberts and the answers Dr. Roberts would have made, we are unable to review Spencer's claim."); Clagett v. Commonwealth, 252 Va. 79, 95, 472 S.E.2d 263, 272 (1996) ("The trial court sustained the Commonwealth's objection to Clagett's attempt to cross-examine the lead investigator concerning Holsinger's remorse for her part in the crime.  As Clagett failed to proffer the testimony he expected to elicit, we will not consider this issue on appeal.").  In such cases, as long as the trial court does not prohibit counsel from proffering the necessary evidence for the record, we will not disturb the court's ruling on appeal.  See Williams v. Harrison, 255 Va. 272, 277, 497 S.E.2d 467, 471 (1998) ("Williams did not proffer the additional questions he intended to ask or the additional testimony he expected to elicit from further cross-examination, *nor was he prevented from doing so by the trial court* . . . [i]n the absence of a proffer, we will not consider this issue on appeal." (emphasis added) (citation omitted)).

In this case, the Commonwealth called Rivera to the stand and questioned him about some of the events leading up to the May 31, 2008 shooting of Omar.  The Commonwealth did not ask Rivera on direct examination about the shooting itself.  During cross-examination, counsel for Cortez-Hernandez also did not ask Rivera about the shooting.  Nevertheless, during

re-direct examination, the Commonwealth asked Rivera about the fight and the shooting. Cortez-Hernandez's counsel objected, arguing only that the Commonwealth exceeded the scope of direct and cross. When the Commonwealth offered to "relieve [Rivera] and re-call him back," the trial court, without further comment, overruled the objection. Upon the conclusion of re-direct, the trial court precluded Cortez-Hernandez's counsel from further cross-examination of the witness. Although counsel again noted her objection, she did not proffer the questions she would have asked or Rivera's expected answers for the record.

Assuming the trial court erred procedurally in disallowing re-cross on matters brought out for the first time on re-direct, as the Commonwealth suggests, we hold that in light of Cortez-Hernandez's failure to proffer the evidence he expected to obtain, we cannot ascertain whether the asserted error is reversible.[4] Cortez-Hernandez failed to proffer his questions and Rivera's expected answers for the record, and the record fails to demonstrate that the trial court prohibited Cortez-Hernandez from doing so. Cortez-Hernandez also failed to re-call the witness to obtain any desired testimony during his own case-in-chief, as he could have done. Without a proper proffer, and because Cortez-Hernandez did not call the witness to testify during his own case, we cannot "competently" ascertain whether or not the trial court's refusal to allow counsel to re-cross-examine Rivera was error, "much less reversible error." Ray, 55 Va. App. at 649, 688 S.E.2d at 880.[5]

---

[4] As the dissent correctly states, the Commonwealth concedes error to the trial court's ruling on *evidentiary* grounds, although we note that this concession does not extend to any asserted constitutional error. However, in any event, we note that we are not bound by a party's legal concessions in our appellate review. See Epps v. Commonwealth, 47 Va. App. 687, 703, 626 S.E.2d 912, 919 (2006).

[5] The dissent cites to Edwards v. Commonwealth, 19 Va. App. 568, 572-73, 454 S.E.2d 1, 3 (1995), and Craig v. Commonwealth, 14 Va. App. 842, 845, 419 S.E.2d 429, 431 (1992), for its proposition that "where the trial court forecloses *altogether* any cross-examination of a crucial witness," a proffer is "unnecessary to find prejudice." However, we find Edwards inapplicable to the issue presented here, since our holding in that case relates solely to the manner in which a

- 9 -

Moreover, contrary to the assertion of the dissent, there is no constitutional dimension to the asserted error properly before us, as Cortez-Hernandez never objected to the trial court's refusal to allow re-cross-examination of Rivera *on the specific basis* that his constitutional right to confrontation required it.[6] Indeed, Cortez-Hernandez never mentioned the Sixth Amendment at all. Rather, his only stated objection to the Commonwealth's questions was that they "exceeded the scope of direct and cross." The trial court was, therefore, never afforded the opportunity to correct any alleged constitutional error. It follows that because Cortez-Hernandez did not raise an objection based on his right of confrontation, that specific objection is not properly preserved for appeal and we will not consider it. See West Alexandria Prop., Inc. v. First Virginia Mortgage and Real Estate Inv. Trust, 221 Va. 134, 138, 267 S.E.2d 149, 151 (1980) ("On appeal, though taking the same general position as in the trial court, an appellant may not rely on reasons which could have been but were not raised for the benefit of the lower court."); Edwards v. Commonwealth, 41 Va. App. 752, 760, 589 S.E.2d 444, 448 (2003) (*en banc*) ("Making one specific argument on an issue does not preserve a separate legal point on the same issue for review.").[7]

---

witness may be impeached and has no application to the issue of whether a proffer is necessary to preserve an evidentiary issue for appellate review. Likewise, we find Craig inapplicable as this Court specifically limited its holding to the "peculiar" facts of that case and simultaneously reiterated the general rule that "a proffer is required so that an appellate court may determine whether the aggrieved party has been prejudiced by the trial court's ruling." 14 Va. App. at 845, 419 S.E.2d at 431. Thus, we are not persuaded that those cases control the disposition of this case.

[6] The Commonwealth does not concede error as to the constitutional issue. In fact, the Commonwealth specifically asserts on brief that Cortez-Hernandez failed to preserve his constitutional argument for appeal.

[7] To say the least, we are surprised at the dissent's assertion that we are inappropriately subordinating "substance to form" by requiring that one's objection, even when based upon constitutional grounds, be made with *specificity* in the trial court. In contrast to the position taken by the dissent, it is a well-settled and longstanding principle of appellate review, as well as an express rule of this Court, to require that all objections to the trial court's rulings be made

- 10 -

In sum, because Cortez-Hernandez failed to proffer the questions he would have asked and Rivera's expected answers to those questions for the record, and because he did not specifically raise an objection to the court's decision based upon the Sixth Amendment right to confrontation, we find the issue is not properly preserved for appeal and we, thus, affirm the trial court as to this assignment of error.

### B. Trial Court's Refusal to Grant Jury Instructions on Excusable Self-Defense and Voluntary Manslaughter

Cortez-Hernandez also claims the trial court erred in refusing to grant his proposed jury instructions on excusable self-defense and voluntary manslaughter. We disagree.

"'On appeal, when the issue is a refused jury instruction, we view the evidence in the light most favorable to the proponent of the instruction.'" Connell v. Commonwealth, 34 Va. App. 429, 436, 542 S.E.2d 49, 53 (2001) (quoting Lynn v. Commonwealth, 27 Va. App. 336, 344, 499 S.E.2d 1, 4-5 (1998)). Nevertheless, "the trial court should instruct the jury only on those theories of the case which find support in the evidence." Morse v. Commonwealth, 17 Va. App. 627, 632, 440 S.E.2d 145, 149 (1994). Indeed, "[i]t is a fundamental principle that 'although an instruction may correctly state the law, it should not be given if it is inapplicable to the facts in evidence . . . [and] might confuse or distract the jury.'" Id. at 633, 440 S.E.2d at 149 (quoting King v. Commonwealth, 2 Va. App. 708, 711, 347 S.E.2d 530, 531 (1986)).

> *Excusable* homicide in self-defense occurs where the accused, although *in some fault in the first instance* in provoking or bringing on the difficulty, when attacked retreats as far as possible, announces his desire for peace, and kills his adversary from a reasonably apparent necessity to preserve his own life or save himself from great bodily harm.

---

*with specificity.* See, e.g, Ingram v. Commonwealth, 1 Va. App. 335, 341, 338 S.E.2d 657, 660 (1986) ("In order for an objection to be preserved for appeal, it must be timely made and the grounds stated *with specificity.* Rule 5A:18."); Hogan v. Commonwealth, 5 Va. App. 36, 45, 360 S.E.2d 371, 376 (1987) ("Consistent with this purpose, we have held that objections must be stated *with specificity* . . . and that a general objection made "for the record" is insufficient.").

- 11 -

<u>Bailey v. Commonwealth</u>, 200 Va. 92, 96, 104 S.E.2d 28, 31 (1958) (emphases added).  On the other hand, "*[j]ustifiable* homicide in self-defense occurs where a person, *without any fault on his part* in provoking or bringing on the difficulty, kills another under reasonable apprehension of death or great bodily harm to himself."  <u>Id.</u> (emphasis added).  In considering a defendant's assertion of self-defense, we recognize the "well-established principle that one assaulted may use only such force as appears to him reasonably necessary to repel the attack."  <u>Cook v. Commonwealth</u>, 219 Va. 769, 773, 250 S.E.2d 361, 364 (1979).

In this case, the trial court rejected Cortez-Hernandez's proposed jury instruction on excusable self-defense because "there is [obviously] no evidence on both sides to back up [the instruction]."  The trial court noted that even under Cortez-Hernandez's own version of events, he was "completely without fault" in the altercation.  In fact, Cortez-Hernandez requested and received a jury instruction on justifiable self-defense, which provided that he "was without fault in provoking or bringing on the fight or difficulty."  Concluding there was "no evidence of either side that there was some degree of fault [on the part of Cortez-Hernandez]," the instruction on excusable self-defense was refused.  The trial court's ruling is not plainly wrong, even viewed from the standpoint of the proponent of the instruction.

In fact, even if Cortez-Hernandez was at fault in the altercation, the record fails to prove he retreated as far as he safely could under the circumstances, that he attempted to abandon the fight, that he made known his desire for peace, and that he *reasonably* feared great bodily harm to himself.  Cortez-Hernandez was the only individual in the entire group armed with a firearm, and he concedes Omar never hit or threatened anyone or otherwise carried a weapon himself.  Significantly, Omar's blood was found 15 feet from where Cortez-Hernandez stood, wielding his gun.  Cortez-Hernandez also testified that the source of his "fear" was an altercation that took place in 2002 that did not involve Omar's group in any way.  He also stated he was surrounded

by eight people, when Omar's group only included four. Despite the fact that no one in Omar's group spoke to or threatened him, Cortez-Hernandez fired his gun toward the small group, only one of whom was himself "armed" with a mere stick. Moreover, rather than expressing a desire for peace, Cortez-Hernandez yelled out "Que vale mierdas," a Mexican idiomatic expression meaning something along the lines of "Who's the next motherfucker?" or "to not be worth shit," or "I'm going to finish you up."

We can only conclude on these facts that the trial court did not err in refusing to grant Cortez-Hernandez's proposed jury instruction on excusable self-defense. As the trial court found, the evidence failed to support the instruction.

With respect to voluntary manslaughter, it is well settled that if a jury in a first-degree murder case rejects an instruction on the lesser-included offense of second-degree murder and finds the defendant guilty of first-degree murder, then it "necessarily rejected the factual basis upon which it might have rendered a verdict on the lesser-included offense of voluntary manslaughter." Turner v. Commonwealth, 23 Va. App. 270, 278, 476 S.E.2d 504, 508 (1996), aff'd, 255 Va. 1, 492 S.E.2d 447 (1997). In such cases, any alleged error in the trial court's refusal to grant an instruction on voluntary manslaughter would be harmless. Id.

Here, as in Turner, the jury rejected the instruction on second-degree murder and convicted Cortez-Hernandez of first-degree murder. It follows that, as in Turner, the jury "would never have reached a voluntary manslaughter verdict." Any supposed error in refusing to award an instruction on voluntary manslaughter would, therefore, be harmless. For that reason, we affirm the trial court's refusal to award a voluntary manslaughter instruction.

### III. Conclusion

For the foregoing reasons, we do not consider Cortez-Hernandez's first assignment of error, because he failed to properly preserve it for appeal. However, we affirm the trial court's refusal to award a jury instruction on excusable self-defense, since the evidence failed to support such an instruction. We also find the trial court did not err in refusing an instruction on voluntary manslaughter, because the jury necessarily rejected the factual premise upon which to convict Cortez-Hernandez of that offense when it convicted him of first-degree murder.

Affirmed.

Haley, J., dissenting.

## I.

I respectfully dissent.

## II.

"'[T]he main and essential purpose of confrontation is to secure for the opponent the *opportunity of cross-examination.*'" Delaware v. Van Arsdall, 475 U.S. 673, 678 (1986) (quoting Davis v. Alaska, 415 U.S. 308, 315 (1974)). Here, the trial court denied Cortez-Hernandez *any* opportunity to cross-examine a key Commonwealth witness on the material issue of whether he was the unprovoked perpetrator of murder.

The Commonwealth concedes the error. Appellee Br. at 13. Cortez-Hernandez objected to the denial of re-cross-examination before the trial court, which understood and ruled on the objection. Nonetheless, the majority holds that because Cortez-Hernandez failed to proffer proposed cross-examination questions, the evidentiary dimension of this error was waived pursuant to Rule 5A:18. The majority also narrowly interprets Cortez-Hernandez's second objection, made during the bench conference, to find he never raised any constitutional issue before the trial court. I believe that the constitutional basis of appellant's error was preserved and that the trial court's improper constriction of Cortez-Hernandez's right to cross-examination was not harmless beyond a reasonable doubt.

Moreover, even assuming *arguendo* the constitutional component of appellant's argument was not properly preserved for appellate review, I believe the trial court's error remains reversible pursuant to Code § 8.01-678. Thus, I respectfully dissent.

I concur with the majority that the trial court correctly denied appellant's proposed jury instructions on excusable self-defense and voluntary manslaughter, upon the record before us.

- 15 -

<u>III. Sixth Amendment Right to Confrontation</u>

The Confrontation Clause of the Sixth Amendment "'"guarantees an *opportunity* for effective cross-examination,"'" <u>Crump v. Commonwealth</u>, 20 Va. App. 609, 612-13, 460 S.E.2d 238, 239 (1995) (quoting <u>Nichols v. Commonwealth</u>, 6 Va. App. 426, 429, 369 S.E.2d 218, 220 (1988) (quoting <u>Delaware v. Fensterer</u>, 474 U.S. 15, 20 (1985))), because it is "fundamental to the truth-finding process," <u>Shanklin v. Commonwealth</u>, 222 Va. 862, 864, 284 S.E.2d 611, 612 (1981) (citing <u>Whittaker v. Commonwealth</u>, 217 Va. 966, 968, 234 S.E.2d 79, 81 (1977)). Indeed it is the primary means by which the credibility and trustworthiness of a witness is tested. <u>Davis</u>, 415 U.S. at 316. Accordingly, it "is only *after* the right of cross-examination has been substantially and fairly exercised that the allowance of further cross-examination becomes discretionary with the court." <u>Moore v. Commonwealth</u>, 202 Va. 667, 669-70, 119 S.E.2d 324, 327 (1961) (emphasis added); <u>United States v. Jordan</u>, 466 F.2d 99, 105 (4th Cir. 1972); <u>see also</u> <u>Brown v. Commonwealth</u>, 246 Va. 460, 463-64, 437 S.E.2d 563, 564-65 (1993) (finding the right to cross-examination, "when not abused, is absolute"). "'Complete foreclosure of cross-examination as to a subject matter relevant to the witness's credibility, which may have deprived the jury of access to information bearing upon the trustworthiness of crucial testimony, cannot be treated as falling within the trial court's discretion.'" <u>Jordan</u>, 466 F.2d at 105 (alterations omitted) (quoting <u>United States v. Kartman</u>, 417 F.2d 893, 897 (9th Cir. 1969)).

"The principles underlying the right of cross-examination apply with *equal strength* to recross-examination when new matter is brought out on redirect." <u>United States v. Riggi</u>, 951 F.2d 1368, 1376 (3d Cir. 1991) (emphasis added); <u>see also</u> <u>Atlantic & D. Ry v. Reiger</u>, 95 Va. 418, 424, 28 S.E. 590, 592 (1897) (where new matter is brought out on redirect, "an opportunity ought to be given to the opposite party to interrogate the witness as to the new matter"); Charles E. Friend, <u>The Law of Evidence in Virginia</u> § 3-14, at 99 (5th ed. 1999); 20 Michie's

Jurisprudence, <u>Witnesses</u> § 47, p. 701 (2004). In such a case "'the defendant's first opportunity to test the truthfulness, accuracy, and completeness of that testimony is on recross examination.'" <u>Riggi</u>, 951 F.2d at 1376 (quoting <u>United States v. Caudle</u>, 606 F.2d 451, 458 (4th Cir. 1979)). In other words, the "recross is to redirect as cross-examination is to direct. To allow redirect examination on new material but deny recross on the same material is to violate both the Confrontation Clause and fundamental principles of fairness." <u>Id.</u> at 1375; <u>see also</u> <u>United States v. Jones</u>, 982 F.2d 380 (9th Cir. 1992); <u>United States v. Morris</u>, 485 F.2d 1385 (5th Cir. 1973).

Here, the majority finds Cortez-Hernandez failed to preserve his constitutional argument because he "never mentioned the Sixth Amendment." I believe that by doing so, the majority does not appreciate the constitutional magnitude of counsel's arguments, set forth in both open court and in the bench conference. In its analysis, the majority subordinates substance to form contrary to the longstanding policy of this Court. <u>See</u>, <u>e.g.</u>, <u>Irvine v. Carr</u>, 163 Va. 662, 668, 177 S.E. 208, 210 (1934) ("it has been the policy of this court for many years, and is still, to subordinate *form* to *substance*, and not to allow the substantial rights of parties to be taken away for the sake of adherence to any forms of procedure not essential to the orderly conduct of judicial proceeding" (emphasis added)). In applying Rule 5A:18 to this case, my analysis is guided by the substance of Cortez-Hernandez's objections, not their form.

Counsel's mutual understanding of the trial court's prior ruling on Cortez-Hernandez's scope objection cannot be ignored when considering whether she adequately raised the constitutional dimension of her cross-examination argument to the trial court. Appellant's counsel objected, "This exceeds the scope," when the prosecution started to broach new material on re-direct examination of Hermenjildo Rivera. The prosecution met appellant's objection with an offer to "relieve [the witness] and re-call him back." The trial court denied the objection without comment, but both parties interpreted the court's adverse ruling as permission for the

- 17 -

Commonwealth to informally recall the testifying witness. To be sure, the Commonwealth takes the position on appeal that the trial court did not err in permitting "the prosecutor to recall the witness." Appellee Br. at 11. With this mutual understanding, the prosecution continued to ask Rivera about the shooting, believing her re-direct had become the logical equivalent of direct examination. Defense counsel, without repeated objections, awaited for what she believed to be her absolute right to cross.

Viewing the bench conference dialogue against this backdrop, it becomes clear Cortez-Hernandez's counsel adequately apprised the trial court of her desire to cross-examine Rivera on new material. Indeed she specifically mentioned the new material — "the actual shooting" — during her argument. The trial judge, after acknowledging the new material, ruled, "You cannot go recross." The trial court undoubtedly understood both that new material was brought out on re-direct and that defense counsel wanted the opportunity to re-cross the witness on that material.

By permitting the Commonwealth to question Rivera about new material and denying Cortez-Hernandez re-cross on the same material, the trial court violated "both the Confrontation Clause and fundamental principles of fairness." Riggi, 951 F.2d at 1375. Under these facts, I would hold that the trial court's arbitrary refusal to allow any re-cross-examination whatsoever was an abuse of discretion.

Like other Confrontation Clause errors, though, improper denial of Cortez-Hernandez's opportunity to cross-examine Rivera is subject to harmless-error analysis. Van Arsdall, 475 U.S. at 684. The correct inquiry is whether the "'the beneficiary of the constitutional error . . . proves beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'" Williams v. Commonwealth, 32 Va. App. 395, 399, 528 S.E.2d 166, 168 (2000) (quoting Chapman v. California, 386 U.S. 18, 24 (1967)); see also Olden v. Kentucky, 488 U.S.

- 18 -

227, 232-33 (1988); Lilly v. Commonwealth, 258 Va. 548, 551, 523 S.E.2d 208, 209 (1999). Even if other evidence amply supports the obtained verdicts, the error is not harmless if "the disputed testimony may well have affected the . . . decision." Cartera v. Commonwealth, 219 Va. 516, 519, 248 S.E.2d 784, 786 (1978). Whether the error was harmless requires consideration of a host of factors including "'the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case.'" Dearing v. Commonwealth, 260 Va. 671, 673, 536 S.E.2d 903, 904 (2000) (quoting Van Arsdall, 475 U.S. at 684).

I believe the unchallenged damaging testimony elicited during the re-direct examination of Rivera contributed to Cortez-Hernandez's conviction. During re-direct, Rivera identified Cortez-Hernandez as an unprovoked shooter, stating he was not involved in the prior physical altercation. He testified Cortez-Hernandez ran into the yard where Omar was standing, yelled a Mexican idiomatic phrase meaning "I'm going to finish you up," then "took out the gun and he pointed the gun, and . . . started to move [it] around . . . and he fired it. A few seconds went by, and he took it up again and he fired again." Rivera's testimony directly contradicted the testimony of Cortez-Hernandez and Jose Ontiveros on the issue of self-defense and served to corroborate the harmful testimony of Ruben Vasquez and Esteban Moreno. The court's ban on re-cross prevented Cortez-Hernandez from challenging any of Rivera's incriminating testimony.

I believe Rivera's testimony on re-direct, denied challenge on cross, necessarily contributed to Cortez-Hernandez's conviction. Accordingly, I would reverse his conviction on the grounds that the trial court violated his Sixth Amendment right to confrontation.

Even if the constitutional error were not properly preserved, however, I believe the trial court's error is reversible pursuant to Code § 8.01-678. The majority cites Code § 8.01-678, but finds that Cortez-Hernandez's failure to proffer proposed cross-examination questions precludes appellate consideration of this assignment of error pursuant to Rule 5A:18.

I disagree that a proffer is necessary in this case because the prejudice caused by the court's denial of re-cross-examination is apparent. The Commonwealth concedes the denial was error. Code § 8.01-678 permits reversal where it does *not* plainly appear that the parties had a "fair trial on the merits . . . ." In my view, a fair trial on the merits presupposes the opportunity to cross-examine adversarial witnesses — an opportunity denied to Cortez-Hernandez.

Undoubtedly, as the majority states, a proper proffer is required when a trial court *limits* the testimony of a witness and the proffer is required for the appellate court to determine whether the exclusion of the testimony prejudiced the party seeking it. Graham v. Cook, 278 Va. 233, 249, 682 S.E.2d 535, 544 (2009). Where the trial court forecloses *altogether* any cross-examination of a crucial witness, however, a proffer is unnecessary to find prejudice. See, e.g., Edwards v. Commonwealth, 19 Va. App. 568, 572-73, 454 S.E.2d 1, 3 (1995) (finding prejudice in the absence of a proffer because there "was no way appellant could have proffered what a potential cross-examination answer would have been until he laid the initial foundation"); Craig v. Commonwealth, 14 Va. App. 842, 845, 419 S.E.2d 429, 431 (1992) (finding prejudice without a proffer because the nature of the witness' response was unnecessary for the determination).

Cross-examination is the "'greatest legal engine ever invented for the discovery of truth.'" California v. Green, 399 U.S. 149, 158 (1970) (citing 5 J. Wigmore, Evidence § 1367, p. 32). The opportunity for effective cross-examination is "'one of the safeguards essential to a fair

trial.'" Pointer v. Texas, 380 U.S. 400, 404 (1965) (quoting Alford v. United States, 282 U.S. 687, 692 (1931)).

Code § 8.01-678 safeguards a trial judge from reversal where it plainly appears that the parties had a fair trial on the merits. By foreclosing on Cortez-Hernandez's opportunity to cross-examine Rivera on the material issue of whether he was the unprovoked perpetrator of murder, however, the trial court denied Cortez-Hernandez a fair trial on the merits. Neither appellant's potential questions nor Rivera's expected responses are necessary to make this determination.

## V. Conclusion

For the foregoing reasons, I respectfully dissent.