COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Chief Judge Huff, Judges Decker and O'Brien
Argued at Alexandria, Virginia


MARQUES LAVAR MOULDS

                                      MEMORANDUM OPINION[*] BY
v.       Record No. 1396-15-4            JUDGE MARLA GRAFF DECKER
                                        OCTOBER 25, 2016
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Grace Burke Carroll, Judge

Lauren Whitley, Senior Assistant Public Defender, for appellant.

Katherine Quinlan Adelfio, Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.


Marques Lavar Moulds appeals his convictions for strangulation, rape, and sodomy, in

violation of Code §§ 18.2-51.6, -61 and -67.1.  At trial, he testified that the victim, his former

girlfriend S.E., had consented to the activities.  On appeal, he contends that the circuit court, under

Virginia's rape shield statute and rule against hearsay, improperly excluded evidence supporting his

theory of the case that was admissible both as substantive evidence and for impeachment purposes.

We hold that the circuit court improperly prevented the appellant from using the evidence for

impeachment purposes and that the error in excluding it was not harmless.  Accordingly, we reverse

the appellant's convictions and remand the case for a new trial should the Commonwealth be so

advised.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

## I. BACKGROUND[1]

The appellant and S.E. dated for about six months, breaking up in early September 2013. The encounter from which the instant charges of strangulation, rape, and sodomy stemmed occurred at S.E.'s residence on the evening of September 30 and the morning of October 1, 2013. Although S.E. sustained no genital injuries, she had bruises and abrasions on her neck. Evidence established that the bruises were "a pattern injury . . . consistent with fingerprints" and the abrasions were consistent with fingernails.

The appellant did not deny the sexual acts but defended the charges on the ground that the events were consensual. Prior to trial, the appellant filed a motion to admit evidence of "prior sexual acts" of S.E. The Commonwealth opposed the motion, suggesting that the evidence at issue was inadmissible under both the rape shield statute and the rule against hearsay. At a pre-trial hearing, the court ruled that the appellant's testimony that, during his relationship with S.E., they had engaged in "rough sex" and "choke play" at S.E.'s request was admissible under the rape shield statute and related rule of court. At the same hearing, the appellant argued that he should be permitted to introduce testimony about related statements that S.E. had made to a third party, Nicole Settles, while at a barbeque at Settles' home late in the summer of 2013. The appellant proffered that during the conversation, S.E. told Settles that she had had rough sex with the appellant in the past and liked it and that the rough sex had included choking. S.E. allegedly said that she wanted to "make [the appellant] a drink" so that he would "get . . . drunk" and be "more aggressive" during

---

[1] Factual findings underlying rulings on the admissibility of evidence are subject to deference upon appellate review unless plainly wrong or without evidence to support them. Accordingly, appellate review of admissibility issues, like sufficiency issues, requires us to view the evidence in the light most favorable to the party prevailing below. See, e.g., Lynch v. Commonwealth, 46 Va. App. 342, 345, 348-50, 617 S.E.2d 399, 400, 402-03 (2005), aff'd, 272 Va. 204, 630 S.E.2d 482 (2006). Additionally, however, this case involves the application of harmless error principles. Consequently, we set out all evidence relevant to the harmless error analysis. See, e.g., Hooker v. Commonwealth, 14 Va. App. 454, 457-58, 418 S.E.2d 343, 345 (1992).

sex. S.E. also allegedly said she "liked it rough" and "liked [the appellant] to be more aggressive." The court ruled that the proffered third-party testimony was inadmissible hearsay and was collateral to the issues at trial. Accordingly, it concluded that the testimony could not be admitted at trial as substantive evidence or for impeachment purposes.

At trial, the evidence established that although S.E. and the appellant broke up in early September 2013, they continued to communicate by telephone and text messages. They contemplated reconciling and made plans to have dinner at her apartment on September 30. During that day, they exchanged more than seventy-five texts. Some of those messages mentioned what they planned to do that night when they were together, including holding one another and not being able to keep their "hands off" each other.

S.E. was late getting home that evening, and the appellant accused her of stopping to see another man. S.E. testified that, as a result, she "was turned off," "didn't really want to talk anymore," and "went to take a shower." While S.E. was in the shower, the appellant entered the bathroom. S.E. testified that the two argued and the appellant "punched [her] in the chest," causing her to fall onto her back in the shower. He then choked her for fifteen to thirty seconds, saying she "need[ed] to learn [her] place as a woman." S.E. told the appellant that she could not breathe and tried to remove his hand from her neck. The appellant stopped choking her but refused to help her get up and hit the shower head, breaking it off.

S.E. managed to get out of the shower and got dressed. She told the appellant that she "was in a lot of pain." S.E. testified that she also told him not to touch her and to leave but that he ignored her, took off her clothes, and "pretty much overpowered" her. The appellant then performed oral sex on S.E. despite her repeated requests for him "to stop." Afterward, he forced her to perform oral sex on him and raped her, despite her physical resistance and pleas for him to "get off of" her. The appellant then took her to her bedroom and raped her again.

S.E. testified that throughout the assaults, she did not scream or call 911 because she was "trying to stay alive" and "protect [her two young] children," who were asleep in another room. She admitted that although she telephoned maintenance about the broken shower head while the appellant was present, she did not attempt to report the appellant's assaults on her.

The appellant and S.E. later fell asleep on the couch. The next morning, the appellant "acted like nothing [had] happened." However, he drove S.E. and her children to their daycare facility, which he had never done before. The appellant told S.E. that the children could go inside by themselves, but she accompanied them into the facility. S.E. testified that she thought about asking the daycare provider to call the police but was afraid that doing so might endanger the provider and the children in the provider's care.

After leaving daycare, S.E. returned to her apartment with the appellant, who again performed forcible oral sex on her, forced her to perform oral sex on him, and raped her. She kept telling the appellant to stop and trying to push him off, but he did not listen to her pleas. He left the apartment at about 7:30 a.m.

S.E. locked her front door and telephoned a friend. That friend and two others came to her apartment. When they arrived, S.E. appeared "shocked," "distraught," "hurt, [and] confused." She was moving and talking "very slowly." Around 9:30 a.m., S.E. telephoned 911. Responding emergency personnel noted that S.E. was "visibly upset and shaken up" and "looked like she was making an effort to walk." They saw abrasions on her neck. She complained of pain and tenderness in her head, neck, back, and abdomen. S.E. was transported to the hospital, where she was examined by an emergency physician and a nurse trained to treat sexual assault victims, and interviewed by a police detective.

Over the next two days, S.E. and the appellant exchanged several text messages and phone calls. S.E. made various statements about the appellant's behavior, including his hitting her,

- 4 -

choking her, and forcing her to have sexual intercourse. The appellant admitted choking her, saying that she never told him that she could not breathe. He did not respond to her claims that he forced her to have sex.

S.E. testified that she and the appellant had a sexual relationship while they were dating but that they did not "engage in . . . rough sex." When asked if she "like[d] to be choked or physically assaulted during . . . intercourse," she replied, "No." Finally, when questioned about whether she had ever asked the appellant to choke her, she again replied, "No." During cross-examination, the appellant elicited testimony from S.E. that she "never told anybody else" that she wanted the appellant to engage in rough sex with her or choke her. Counsel for the appellant then asked the judge if he could explore the issue further. The judge again ruled that the evidence that S.E. told Settles she liked rough sex was hearsay and could not be used to impeach S.E.

The Commonwealth and the appellant presented conflicting expert testimony regarding whether the physical evidence proved that the encounter was forcible. The sexual assault nurse who examined S.E. opined that the abrasions and bruises on her neck, which were consistent with two fingers and a thumb, were significant because only ten to twenty percent of strangulation victims show any sign of external injury. The nurse testified that she did not detect any visible genital injuries despite a thorough exam but that both her experience and the medical literature indicate that only ten to fifty percent of adult patients who report being sexually assaulted have such injuries. The appellant presented testimony from a medical doctor, who had forty years of experience in the fields of obstetrics, gynecology, and emergency medicine. He questioned the conclusions drawn by the sexual assault nurse, opining that if the events occurred as S.E. reported them, she should have sustained injuries to her head, mouth, legs, and genitals.

The appellant testified in his own behalf. He said that during his relationship with S.E., she encouraged him to be aggressive and engage in "rough sex" and "choke play." He further testified

that she put his hand around her throat during intercourse and that he choked her "a lot of times" while having sex. The appellant claimed that on one occasion prior to September 30, 2013, he had left marks on S.E.'s neck during "choke play." He later admitted, however, that at the pre-trial hearing, he had testified that he did not recall ever leaving a mark on her.

Regarding the events of September 30 and October 1, 2013, the appellant admitted accusing S.E. of having been with another man and grabbing her by the shoulders, causing her to fall. The appellant testified, however, that she did not complain of any injury. Finally, he averred that the sexual activity and "choke play" they engaged in that evening and the next morning was consensual.

The appellant also testified regarding the text messages and telephone conversations in which he and S.E. engaged in the days immediately following the incidents. He admitted continuing to correspond with S.E. after she accused him of forcing her to have sex with him. He claimed, however, that he did not respond to or deny those particular allegations because they were so "far fetched" that he did not know how to respond.

The jury convicted the appellant of one count each of strangulation and rape and two counts of sodomy. It acquitted him of an additional rape, alleged to have occurred on October 1, 2013. The court sentenced the appellant to one month for the strangulation, five years for the rape, and five years for each of the sodomy counts, with the sodomy sentences to run concurrently.

## II. ANALYSIS

The appellant contends that the trial court improperly excluded the proffered testimony that S.E. made statements to Nicole Settles about enjoying rough sex and choke play with the appellant. He argues that the challenged statements were admissible both as substantive evidence and for impeachment purposes and that their improper exclusion was not harmless. The Commonwealth responds that the appellant did not properly preserve his assignments of error for appeal, that they lack merit, and that even if error occurred, it was harmless.

- 6 -

### A. Admissibility of S.E.'s Prior Statements

Determining the admissibility of evidence is within the sound discretion of the trial court subject to review for an abuse of that discretion. E.g., Creamer v. Commonwealth, 64 Va. App. 185, 194, 767 S.E.2d 226, 230 (2015). Only when reasonable jurists could not differ can the Court conclude that an abuse of discretion has occurred. Thomas v. Commonwealth, 44 Va. App. 741, 753, 607 S.E.2d 738, 743, adopted upon reh'g en banc, 45 Va. App. 811, 613 S.E.2d 870 (2005). A trial court abuses its discretion, however, if it makes an error of law. See, e.g., Dean v. Commonwealth, 61 Va. App. 209, 213, 734 S.E.2d 673, 675 (2012). Further, if the issue of admissibility hinges on the interpretation of a statute or rule of court, that interpretation is a question of law subject to *de novo* review. Id. To the extent that the question of admissibility involves underlying factual findings, we defer to those findings unless they are plainly wrong. E.g., Lynch v. Commonwealth, 46 Va. App. 342, 348-50, 617 S.E.2d 399, 402-03 (2005), aff'd, 272 Va. 204, 630 S.E.2d 482 (2006).

### 1. Admissibility as Substantive Evidence

The evidence that the appellant contends should have been admitted comprises both S.E.'s alleged statement that she enjoyed past incidents of rough sex with the appellant and her assertion that she hoped to engage in rough sex with the appellant later on the night she made the statement, which occurred several weeks prior to the events upon which the appellant's convictions are based. The appellant contends that this evidence was relevant to prove his defense of consent and that it complied with the requirements for admissibility under Virginia's rape shield statute, Code § 18.2-67.7, as well as the rule against hearsay.

Code § 18.2-67.7(A) provides, in relevant part, that "[i]n prosecutions under this article, . . . general reputation or opinion evidence of the complaining witness's unchaste character or prior sexual conduct shall not be admitted." The statute contains an exception for evidence of "specific

instances" of "prior sexual conduct . . . between the complaining witness and the accused" if the evidence is relevant and is "offered to support a contention that the alleged offense was not accomplished by force, threat or intimidation."[2]  Code § 18.2-67.7(A)(2).  Prior sexual conduct is defined as "any sexual conduct on the part of the complaining witness which took place before the conclusion of the trial, excluding the conduct involved in the offense alleged under this article."  Code § 18.2-67.10(5).  Additionally, for any evidence of prior sexual conduct by the complaining witness to be admissible, it must comply with the usual rules of evidence, including the rule against hearsay.  Winfield v. Commonwealth, 225 Va. 211, 221, 301 S.E.2d 15, 21 (1983).

The appellant concedes that the testimony of Settles that he sought to admit was hearsay, but he suggests that it was admissible as substantive evidence under the state-of-mind exception contained in Virginia Rule of Evidence 2:803(3).  That evidentiary rule provides an exception for a "statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent [or] plan . . . ), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of the declarant's will."  Va. R. Evid. 2:803(3).  Applying these principles in the appellant's case, we conclude that the trial court did not err in excluding the two categories of statements as substantive evidence.

First, regarding S.E.'s statement to Settles about engaging in rough sex with the appellant *in the past*, that statement did not qualify for admission under the state-of-mind exception to the hearsay rule because it did not describe her condition at the time she allegedly made it and did not

---

[2] The evidence, additionally, must involve conduct that "occurred within a period of time reasonably proximate to the offense charged under the circumstances."  Code § 18.2-67.7(A)(2). We need not consider whether the statements at issue met this requirement because we conclude for other reasons that they were inadmissible as substantive evidence.  See, e.g., Commonwealth v. Swann, 290 Va. 194, 196, 776 S.E.2d 265, 267 (2015) (noting that appellate courts decide cases on the "best and narrowest ground[] available" (quoting McGhee v. Commonwealth, 280 Va. 620, 626 n.4, 701 S.E.2d 58, 61 n.4 (2010))).

fall under the rule's exception for a past memory concerning the execution of the declarant's will. See Kauffmann v. Commonwealth, 8 Va. App. 400, 406-07, 382 S.E.2d 279, 282-83 (1989) (holding the statements of a victim that the defendant had molested her in the past were not admissible under the state-of-mind exception).

Second, regarding S.E.'s statement to Settles that she wanted to get the appellant drunk so that he would engage in rough sex later that night (a night at least several weeks prior to the night of the charged crimes), this statement did not qualify for admission under the rape shield statute.[3] That statute permits the admission of evidence of "prior sexual conduct . . . between the complaining witness and the accused." Code § 18.2-67.7(A)(2). The plain meaning of "conduct" is behavior, not speech. See Conduct, Webster's Third New International Dictionary (1981); see also Cairns v. Commonwealth, 40 Va. App. 271, 284, 579 S.E.2d 340, 346 (2003) (citing with approval the ruling that "the act of writing about sexual desires or activities is not itself prior sexual *conduct*" under the rape shield statute (emphasis added) (quoting State v. Vonesh, 401 N.W.2d 170, 176-77 (Wis. 1986))); League v. Commonwealth, 9 Va. App. 199, 205, 385 S.E.2d 232, 236 (1989) (expressly disclaiming an "inten[t] to imply[] that . . . a prosecutrix['s] prospectively consent[ing] to have sex would constitute 'prior sexual *conduct*' for purposes of [the rape shield statute]" (emphasis added)), adopted upon reh'g en banc, 10 Va. App. 428, 392 S.E.2d 510 (1990). Thus, S.E.'s *statement* that she hoped to have aggressive sex with the appellant later that evening was not sexual *conduct* and did not occur between the complaining witness and the accused. Instead, the sexual activity was future activity for which the complaining witness expressed a desire, and that activity may or may

---

[3] We assume without deciding that this statement qualified for admission under the state-of-mind hearsay exception. See, e.g., Clay v. Commonwealth, 262 Va. 253, 257-58, 546 S.E.2d 728, 730 (2001) (upholding admission of the statements of a homicide victim that she intended to move because she feared the defendant).

not have occurred. Therefore, S.E.'s statement of future intent did not meet the requirements for admissibility under the rape shield statute.

Accordingly, we hold that the trial court did not err in concluding that the proffered testimony of Settles was not admissible as substantive evidence.

## 2. Admissibility for Impeachment Purposes

The appellant also contends that the court erred in ruling that testimony concerning S.E.'s statements about rough sex and choke play was inadmissible for impeachment purposes. For the reasons that follow, we agree.

A common method of impeachment is to show that a witness has made a statement on some prior occasion that is inconsistent with the testimony that the witness has given at trial. See McCarter v. Commonwealth, 38 Va. App. 502, 506-07, 566 S.E.2d 868, 870 (2002). Under settled principles, evidence of a complainant's prior inconsistent statement need not satisfy a statutory exception under the rape shield statute if it is used solely to impeach the complainant, because the statement does not constitute evidence of prior sexual conduct. See Clinebell v. Commonwealth, 235 Va. 319, 322-23, 368 S.E.2d 263, 264-65 (1988); Cairns, 40 Va. App. at 284-86, 579 S.E.2d at 346-47. Additionally, prior inconsistent statements do not run afoul of the rule against hearsay if admitted solely for impeachment. See, e.g., Wells v. Commonwealth, 32 Va. App. 775, 783, 531 S.E.2d 16, 20 (2000).

Cross-examination for purposes of impeachment is limited, however, to matters relevant to the issues on trial. See Simpson v. Commonwealth, 13 Va. App. 604, 606-07, 414 S.E.2d 407, 409 (1992). If the matter is collateral, it is not a proper subject for impeachment by inconsistent statements. Id. The test regarding whether a point is material or collateral "is whether or not the cross-examining party would be entitled to prove [the point] in support of his case." Maynard v.

Commonwealth, 11 Va. App. 437, 445, 399 S.E.2d 635, 640 (1990) (*en banc*) (quoting Allen v. Commonwealth, 122 Va. 834, 842, 94 S.E. 783, 786 (1918)).

Whether the appellant forcibly strangled, raped, and sodomized S.E. or whether she consented to the contact was a material issue at trial. The appellant defended the charges on the ground that S.E. consented to the activity. Additionally, the court clearly recognized the importance of this defense, ruling prior to trial that the appellant would be permitted to testify that S.E. had introduced him to rough sex and choke play and encouraged him to choke her during prior consensual sexual activity. Consequently, whether S.E. had previously told a third party that she enjoyed engaging in rough sex and choke play with the appellant was not collateral, and the trial court erred in ruling to the contrary.

The Commonwealth contends that the trial court did not err in excluding the proffered testimony because the appellant failed to lay a proper foundation for it. In order to establish a proper foundation for impeachment by a prior inconsistent statement, the party must call the attention of the witness to the statement and ask her whether she made it. See, e.g., Via v. Commonwealth, 42 Va. App. 164, 184-85, 590 S.E.2d 583, 593 (2004). If the witness denies making the statement or does not recall making it, counsel may cross-examine the witness regarding the inconsistency. Smith v. Commonwealth, 15 Va. App. 507, 511, 425 S.E.2d 95, 98 (1992). If necessary, counsel may impeach the witness "by introducing other evidence, such as another witness who heard the inconsistent statement." Edwards v. Commonwealth, 19 Va. App. 568, 572, 454 S.E.2d 1, 3 (1995); see Va. R. Evid. 2:613(a).

Here, the trial court specifically ruled at the pre-trial hearing that Settles' proffered testimony was collateral and was not admissible for *any* purpose, including impeachment. Based on that ruling, the appellant was not permitted at trial to ask S.E. whether she made the statements at issue to Settles.

- 11 -

In addition, the court ruled mid-trial that the appellant could not ask S.E. specifically whether she made the alleged statements to Settles. S.E. testified on direct examination that she and the appellant did not engage in rough sex; she did not like to be choked or physically assaulted during intercourse; and she never asked the appellant to choke her. On cross-examination, the appellant renewed his request to explore the issue, asking the court whether he could further question S.E. on the issue and call Settles if S.E. denied making the statements. The trial court allowed the appellant to cross-examine S.E. about "whether or not she liked rough sex." The appellant's counsel also asked S.E. whether she ever "told anybody else" that she wanted to engage in "rough sex" or "chok[ing]" with the appellant, and she testified that she did not. The court then denied counsel's request to ask S.E. specifically about the alleged prior inconsistent statements to Settles and to call Settles to testify.

Following the court's ruling, counsel for the appellant proffered his legal argument and the remainder of his intended examination, including the necessary foundation, in great detail. He explained his understanding of Virginia Rules of Evidence 2:607 and 2:613, concerning impeaching a witness with her prior inconsistent statements. He asserted the need to call S.E.'s attention to the particular occasion on which the inconsistent statement was made and to ask her "whether the statement was made." Counsel explained that if the witness denied or did not recall making the statement, he would then be "permitted to use extrinsic proof" because the issue was not collateral. In short, the appellant recognized the foundation that he would be required to lay before Settles' testimony could be admitted, but the court expressly prevented the appellant from laying that foundation during trial.

The appellant's case is distinguishable from Cortez-Hernandez v. Commonwealth, 58 Va. App. 66, 78-80, 706 S.E.2d 893, 899-900, adhered to on reh'g en banc, 59 Va. App. 37, 716 S.E.2d 484 (2011), in which this Court held that the defendant's assignment of error was barred

because he failed to make an adequate proffer of his proposed questions for the Commonwealth's witness and the expected answers.[4] We recognized in Cortez-Hernandez that a proffer, by its very nature, may be "the testimony [that the party] *expected* to elicit." Id. at 77, 706 S.E.2d at 899 (emphasis added) (quoting Ray v. Commonwealth, 55 Va. App. 647, 650, 688 S.E.2d 879, 881 (2010)). The "range of content required" for a proper proffer "depend[s], in part, on the proffer's purpose." Creamer, 64 Va. App. at 195, 767 S.E.2d at 231. It must be "sufficiently detailed" to allow the trial court "a fair opportunity 'to resolve the issue at trial.'" Id. at 195, 199 n.7, 767 S.E.2d at 230, 233 n.7 (quoting Albert v. Albert, 38 Va. App. 284, 290 n.1, 563 S.E.2d 389, 392 n.1 (2002)). Additionally, on appeal, the proffer must be sufficient "to allow the appellate court to determine whether the trial court erred in excluding the evidence and, if so, whether that error was harmless." Id. at 195, 767 S.E.2d at 230. "Though sometimes thought of as a mere waiver principle, the proffer requirement serves the higher purpose of safeguarding our duty under Code § 8.01-678 to reverse only when the trial court error actually prejudiced the defense." Cortez-Hernandez, 58 Va. App. at 76-77, 706 S.E.2d at 898-99 (footnote omitted) (quoting Ray, 55 Va. App. at 650, 688 S.E.2d at 881). In short, making an adequate proffer does not compel a litigant to examine a witness under oath outside the presence of the jury as long as the proffer method employed satisfies these various goals.

Moreover, waiver principles do not apply if the trial court "prohibit[s] counsel from proffering the necessary evidence for the record." Id. at 77-78, 706 S.E.2d at 899; see Maxwell v. Commonwealth, 287 Va. 258, 265-67, 754 S.E.2d 516, 519-20 (2014) (applying Code

---

[4] Error "may not be predicated upon admission or exclusion of evidence, unless . . . [a]s to evidence excluded, the *substance* of the evidence was made known to the court by proffer." Va. R. Evid. 2:103(a)(2) (emphasis added); see Whittaker v. Commonwealth, 217 Va. 966, 969, 234 S.E.2d 79, 81 (1977) (noting that "a unilateral avowal of counsel, if unchallenged," may constitute a proper proffer).

§ 8.01-384(A) to hold that a defendant did not waive his right to appeal where he was absent and unable to object).

We applied waiver principles in Cortez-Hernandez, ruling that the defendant's claim of error was barred on appeal because he failed to make an adequate proffer and was not prevented by the trial court from doing so. 58 Va. App. at 78-79, 706 S.E.2d at 899-900. Here, by contrast, the appellant's proffer was sufficiently detailed to give the circuit court a fair opportunity to resolve the issue at trial. Further, it was sufficiently detailed to permit this Court to determine that error occurred and, as discussed *infra* in Part II.B., to analyze whether that error was harmless. Therefore, we hold that the trial court's restriction of the cross-examination of S.E. and exclusion of Settles' testimony was error.

## B. Harmless Error

The law of the Commonwealth requires this Court to determine in all cases involving error whether the error was harmless. Ferguson v. Commonwealth, 240 Va. ix, ix, 396 S.E.2d 675, 675 (1990) (citing Code § 8.01-678). Non-constitutional error is harmless "[w]hen it plainly appears from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached."[5] Code § 8.01-678. This Court may uphold a decision on the ground that any error involved is harmless only if it can conclude, without usurping the jury's fact-finding function, "that the error did not influence the jury[] or had but slight effect." Clay v. Commonwealth, 262 Va. 253, 260, 546 S.E.2d 728, 731 (2001) (quoting Kotteakos v. United States, 328 U.S. 750, 764 (1946)); see Turner v. Commonwealth, 23 Va. App. 270, 275-78, 476 S.E.2d 504, 507-08 (1996) ("usurping" standard), aff'd, 255 Va. 1, 492 S.E.2d 447 (1997). In

---

[5] The appellant contends that the more rigorous constitutional harmless error standard applies. Inasmuch as we find error under the lesser standard, we need not evaluate the case under the greater standard. Cf. Dearing v. Commonwealth, 260 Va. 671, 674, 536 S.E.2d 903, 904 (2000) (holding that where any error was harmless under the constitutional standard, the Court did not need to consider whether that error was harmless under the non-constitutional standard).

determining whether an error in restricting cross-examination is harmless, the "analysis turns not on the evidence excluded . . . but on the evidence in the record, *viz.*, [the witness'] testimony, which was not fully subject to cross-examination." Scott v. Commonwealth, 25 Va. App. 36, 42, 486 S.E.2d 120, 123 (1997). Factors for consideration include "the importance of the . . . testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony . . . on material points, the extent of cross-examination otherwise permitted, and . . . the overall strength of the prosecution's case." Perry v. Commonwealth, 58 Va. App. 655, 672, 712 S.E.2d 765, 774 (2011) (quoting Delaware v. Van Arsdall, 475 U.S. 673, 684 (1986)).

The parties agree that because the appellant conceded that he had engaged in sexual activity with S.E. and squeezed her neck, the only issue for the jury to decide was whether the strangulation, intercourse, and oral sex were forcible and were against S.E.'s will. The resolution of this key element hinged largely on the jury's assessment of the credibility of S.E., the witness whose testimony "was not fully subject to cross-examination," Scott, 25 Va. App. at 42, 486 S.E.2d at 123.

The remaining evidence tending to indicate that the activities were forcible rather than consensual was significant but not overwhelming and presented the classic question of who the jury should believe. Several witnesses saw S.E. shortly after the incident and could tell based on her physical and mental state that she had been injured and was upset, but it was undisputed that she sustained some of these injuries through a non-sexual event in the shower, and the parties disputed whether she merely slipped or was pushed. See League, 9 Va. App. at 208-09, 385 S.E.2d at 238. Additionally, S.E.'s thorough sexual assault exam revealed no genital injuries, and the parties presented conflicting expert testimony regarding the likelihood of such a result in a case of repeated forcible intercourse. The Commonwealth's expert witness testified that it is not unusual for victims of rape to sustain no visible injuries, particularly if the rape follows oral sex, as was alleged here.

- 15 -

However, the appellant's expert witness testified that the probability that S.E. could have experienced "three forcible [vaginal] penetrations in less than eight hours" with no sign of "any kind of force on her vagina approaches impossible." Further, the appellant testified that S.E. introduced him to rough sex and choke play, and he said that the bruises on S.E.'s neck at the time of the sexual assault exam resulted from what was merely another consensual episode of such activity.

The Commonwealth points to the appellant's failure to deny the accusations made by S.E. in various text messages and telephone conversations after the events at issue. The appellant, however, testified that the allegations were so "far fetched" that he did not know how to respond. Further, none of the inconsistencies that the Commonwealth proved in its efforts to impeach the appellant with evidence of his own prior statements was so damning as to *compel* the jury to reject his explanation.

Even though ample evidence in the record supports the appellant's convictions, harmless error analysis "[is not] simply a sufficiency of the evidence analysis." See, e.g., Williams v. Commonwealth, 32 Va. App. 395, 400, 528 S.E.2d 166, 169 (2000) (*en banc*) (alteration in original) (quoting Hooker v. Commonwealth, 14 Va. App. 454, 458, 418 S.E.2d 343, 345 (1992)). In a general sufficiency analysis that relies primarily on the testimony of a single witness, the credibility of that witness' testimony "will be a significant factor in the jury's determination of the accused's . . . culpability." Lilly v. Commonwealth, 258 Va. 548, 553, 523 S.E.2d 208, 210 (1999). However, in the context of harmless error analysis,

> the issue is not the credibility of the witness, but rather the potential for harm caused by the erroneous [exclusion] of evidence [that] tends to [impact] the jury's credibility determination. In that context we must presume that [the excluded] evidence had the potential to influence the jury into [rejecting] the properly admitted evidence [supporting the Commonwealth's version of events] and, thus, [that its exclusion may have] taint[ed] the jury's determination of the facts.

Id. On the instant record, we simply cannot, without usurping the jury's fact finding function, determine what impact the erroneous exclusion of the proffered impeachment evidence had on the jury's assessment of S.E.'s, and correspondingly the appellant's, credibility. See, e.g., Cash v. Commonwealth, 5 Va. App. 506, 511-13, 364 S.E.2d 769, 771-72 (1988) (holding that the improper exclusion of certain exhibits, which would have permitted the defendant "to argue forcefully to the jury that those exhibits corroborated [his] version of the facts" as compared to the police officer's version, was not harmless). Therefore, we are unable to conclude that the error in excluding evidence of S.E.'s prior inconsistent statements to Settles for the purpose of impeaching S.E. on a key issue "did not influence the jury[] or had but slight effect." Clay, 262 Va. at 260, 546 S.E.2d at 731 (quoting Kotteakos, 328 U.S. at 764).

## III. CONCLUSION

We hold that the trial court did not err in ruling that evidence of S.E.'s statements to Settles was inadmissible as substantive evidence under Virginia's rape shield statute and rule against hearsay. However, we also conclude that the court erred in refusing to admit evidence of S.E.'s prior inconsistent statements for impeachment purposes. Finally, we hold that the erroneous exclusion of that evidence was not harmless. Consequently, we reverse the appellant's convictions and remand for retrial should the Commonwealth be so advised.

Reversed and remanded.