COURT OF APPEALS OF VIRGINIA

Present:    Judges Decker, Malveaux and Senior Judge Annunziata

DAVITTA ROBINSON

v.      Record No. 1397-16-4

CITY OF ALEXANDRIA DEPARTMENT OF
  COMMUNITY AND HUMAN SERVICES

MEMORANDUM OPINION*
PER CURIAM
JANUARY 10, 2017

FROM THE CIRCUIT COURT OF THE CITY OF ALEXANDRIA
Lisa B. Kemler, Judge

(Isabel Kaldenbach, on brief), for appellant.  Appellant submitting
on brief.

(Jonathan D. Westreich; James L. Banks; Jill A. Schaub; Office of
the City Attorney, on brief), for appellee.  Appellee submitting on
brief.

(Debra Susan Bray; Amole & Bray, P.C., on brief), Guardian *ad
litem* for the minor children.  Guardian *ad litem* submitting on
brief.

Davitta Robinson (mother) appeals the orders terminating her parental rights to five of her

children and approving the goals of adoption.  Mother argues that the trial court erred because (1) "it

considered and relied upon a document not admitted into evidence;" (2) "it denied two motions to

continue;" (3) "it prevented [mother] from cross-examining witnesses on a key element of the case;"

and (4) it found that the City of Alexandria Department of Community and Human Services (the

Department) had proven by clear and convincing evidence that termination of parental rights was in

the best interests of the children.  Upon reviewing the record and briefs of the parties, we conclude

that the trial court did not err.  Accordingly, we affirm the decision of the trial court.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

BACKGROUND

We view the evidence in the light most favorable to the prevailing party below and grant to it all reasonable inferences fairly deducible therefrom. See Logan v. Fairfax Cty. Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991).

Mother has five children who are the subject of this appeal. The five children include two sons, T.W. who was born in May 2005 and L.E. who was born in August 2009, as well as three daughters, T.R. who was born in February 2007, A.W. who was born in March 2008, and I.E. who was born in December 2010.

The police responded to mother's house eleven times between 2011 and 2014. The Department also had been involved with mother and her family in January 2014. There were three prior child protective service complaints regarding physical abuse, medical neglect, and exposure to domestic violence and alcohol use.

On November 10, 2014, T.W. called 911 because he found his two-week-old sister, R.R., lying under her mother in her mother's bed. R.R. was not breathing and was bleeding from her nose. The emergency personnel responded and rushed R.R. to the hospital. R.R. sustained a significant neurological injury due to lack of oxygen and subsequently died on November 15, 2014. Mother was charged with felony child endangerment. In December 2015, mother pled guilty to the felony child endangerment charge pursuant to North Carolina v. Alford, 400 U.S. 25 (1970). In accordance with the plea agreement, the Circuit Court of the City of Alexandria sentenced mother to five years in prison, with five years suspended, and two years of supervised probation.

Mother admitted that she drank approximately thirty ounces of wine prior to going to bed on November 9, 2014. She said that she was intoxicated and went to bed with R.R. cradled in her arm. A police officer and social worker interviewed mother on the day of the incident, and they detected a strong odor of alcohol emanating from mother. Officer Will Oakley stated that mother rode with

him, instead of with R.R., to the hospital. During the ride to the hospital, mother fell asleep and snored loudly. Oakley stated that the police cruiser smelled of alcohol after mother exited.

At the time of the incident, eleven people lived in mother's house. There were four bedrooms and four beds. Three children were under the age of three, but there were no cribs or bassinets in the house. The house was dirty and in disarray and smelled of cigarettes.

On November 11, 2014, the Department removed the children from mother's care, and on November 18, 2014, the Alexandria Juvenile and Domestic Relations District Court (the JDR court) entered the preliminary removal orders. On December 9, 2014, the JDR court found that mother's five children were abused and neglected.

The children had various issues when they entered foster care. For example, I.E. displayed signs of inappropriate social and sexual behaviors. The children received individual therapy and family therapy.

The Department offered numerous services to mother. She received individual therapy, one-on-one parent coaching, assistance with transportation, a washer and dryer, and $900 worth of home goods, such as towels, bedding, health and hygiene products, and groceries.

In July 2015, Dr. Christopher Bishop completed a parental capacity assessment on mother. Dr. Bishop determined that mother had "limited cognitive abilities" and "difficulty in making decisions effectively." She also was "at risk to be taken advantage [of] by others" and was "susceptible to being influenced by others who may not have the best interest in mind." Dr. Bishop did not recommend that mother "be the primary caretaker of her children without support from the community." Dr. Bishop opined that mother "presents sufficient risk for neglect if all her children are returned to her at once." He recommended continued therapy because mother minimized the domestic violence in the household. She also disregarded the idea that her drinking and her having

the child sleep in her bed could have led to R.R.'s death, so Dr. Bishop concluded that a therapist should work with mother to improve her insight and judgment.

Despite the services offered to mother, she continued to engage in assaultive behavior. On May 16, 2015, mother was arrested for disorderly conduct because she was fighting another female in the street after midnight. Mother was convicted of that offense. On October 2, 2015, mother was arrested for assaulting a store owner.

In August 2015, the Department returned T.W. and L.E. to mother's care. In December 2015, the Department returned I.E. to mother's care. Beginning in December 2015, T.R. and A.W. had overnight visits with mother.

During this time period, mother continued to see Davon Drummond, the father of R.R. The Department told mother to terminate her relationship with Drummond for the safety of her children. Drummond had a history of drug use and domestic violence. However, unbeknownst to the Department until December 2015, mother was pregnant with her seventh child, who was due in April 2016. Drummond was the father of the unborn child.

In February 2016, the JDR court disapproved of the foster care plans with the goal of return home. The JDR court found that mother had not made "marked progress toward reunification."

After the JDR court disapproved the foster care plans, T.W., L.E., and I.E. were returned to foster care, and T.R. and A.W.'s overnight visits were stopped. While he was in mother's care, T.W.'s eyeglasses were lost, and he did not get a new pair until he returned to foster care. T.W.'s school work improved when he returned to foster care. He no longer fell asleep in class and was not tardy. T.W. and L.E. also received necessary dental care, and I.E. started play therapy.

On April 5, 2016, the JDR court terminated mother's parental rights to her five children and approved the foster care plans with the goal of adoption. Mother appealed to the circuit court. The circuit court heard evidence and arguments on July 25, 26, and 27, 2016. On July 27, 2016, the

- 4 -

circuit court held that it was in the children's best interests to terminate mother's parental rights pursuant to Code § 16.1-283(B), (C)(2), (E)(iii), and (E)(iv). The circuit court also approved the foster care plans with the goal of adoption. This appeal followed.

ANALYSIS

I.

Mother argues that the trial court erred in considering and relying on the guardian *ad litem*'s (GAL) report for its ruling, even though the report was not admitted into evidence. Mother admits that she did not preserve this issue for appeal. She states that she did not have an opportunity to object and asks the Court to consider the argument based on the ends of justice.

Rule 5A:18 states, "No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable the Court of Appeals to attain the ends of justice."

"The purpose of Rule 5A:18 is to allow the trial court to correct in the trial court any error that is called to its attention." Lee v. Lee, 12 Va. App. 512, 514, 404 S.E.2d 736, 737 (1991) (*en banc*). We "will not consider an argument on appeal which was not presented to the trial court." Ohree v. Commonwealth, 26 Va. App. 299, 308, 494 S.E.2d 484, 488 (1998).

Contrary to mother's arguments, she had the opportunity to object, but failed to do so. Mother signed the final orders as "seen and objected to" without specific objections, and she did not file any post-trial motions. Accordingly, the good cause exception does not apply. See M. Morgan Cherry & Assocs. v. Cherry, 38 Va. App. 693, 702, 568 S.E.2d 391, 396 (2002) (*en banc*) (holding that Rule 5A:18 applied because the party failed, "without good cause," to object to the evidence).

Furthermore, the ends of justice exception does not apply. "The ends of justice exception is narrow and is to be used sparingly . . . ." Redman v. Commonwealth, 25 Va. App. 215, 221,

- 5 -

487 S.E.2d 269, 272 (1997) (quoting Brown v. Commonwealth, 8 Va. App. 126, 132, 380 S.E.2d 8, 10 (1989)). "In order to avail oneself of the exception, a defendant must affirmatively show that a miscarriage of justice has occurred, not that a miscarriage *might* have occurred." Id. (emphasis in original) (citing Mounce v. Commonwealth, 4 Va. App. 433, 436, 357 S.E.2d 742, 744 (1987)). Mother did not show that a miscarriage of justice occurred by the trial court reading and considering the GAL's report in issuing its ruling.

## II.

Mother argues that the trial court erred by denying her motion to continue the case. Mother's counsel informed the trial court that she was instructed by mother to file the motion for a continuance because mother did not feel prepared and did not think her attorney was prepared. When asked by the trial court, mother's counsel told the trial court that she was prepared and ready for trial. However, twelve days prior to the start of the trial, mother provided her attorney with a new list of potential witnesses and asked her counsel to locate the witnesses. Counsel was unable to locate and interview the witnesses prior to trial. The trial court denied the motion to continue because counsel stated that she was prepared. Counsel had been involved with the case for approximately seven or eight months, and mother had sufficient time to provide counsel with the names of any potential witnesses. The trial court noted that it "would not serve anybody's interests, but most particularly, the children, to continue this matter, and to add to any anxiety that they might be experiencing."

> The decision to grant a motion for a continuance is within the sound discretion of the circuit court and must be considered in view of the circumstances unique to each case. The circuit court's ruling on a motion for a continuance will be rejected on appeal only upon a showing of abuse of discretion *and* resulting prejudice to the movant.

Haugen v. Shenandoah Valley Dep't of Soc. Servs., 274 Va. 27, 34, 645 S.E.2d 261, 265 (2007).

The trial court did not abuse its discretion in denying the motion to continue. Mother's counsel assured the court that she was prepared and ready to proceed. Mother gave her counsel a list of names of potential witnesses twelve days before the hearing, even though her counsel had been representing her for at least seven months. Despite mother's tardiness, the trial court informed mother that if she could locate the additional witnesses that she wished to call and her counsel had time to talk with them, then the trial court would not necessarily prohibit her from calling those witnesses, despite the pretrial orders. Since the trial court did not abuse its discretion in denying the motion to continue, this Court need not consider whether there was any prejudice to mother.[1]

III.

Mother argues that the trial court erred in preventing her from cross-examining the CASA worker regarding mother's relationship with Drummond; however, mother did not proffer the expected testimony of the CASA worker.

"In Virginia, when 'testimony is rejected before it is delivered, an appellate court has no basis for adjudication unless the record reflects a proper proffer.'" Ray v. Commonwealth, 55 Va. App. 647, 649, 688 S.E.2d 879, 880 (2010) (quoting Whittaker v. Commonwealth, 217 Va. 966, 968, 234 S.E.2d 79, 81 (1977)). "When an appellant claims a trial court abused its discretion in excluding evidence, we cannot competently determine error — much less reversible error — without a proper showing of what that testimony would have been." Id. (quoting Tynes v. Commonwealth, 49 Va. App. 17, 21, 635 S.E.2d 688, 689 (2006)).

---

[1] Mother raises additional arguments in her opening brief regarding the continuance requests. Rule 5A:20(c) states that an appellant's opening brief contain a "statement of the assignments of error with a clear and exact reference to the page(s) of the transcript, written statement, record, or appendix where each assignment of error was preserved in the trial court." Mother only cited to the portion of the transcript relating to the above exchange between the court and counsel. We will not search the record to determine whether the trial court erred in denying the motion to continue based on the other arguments in appellant's brief, i.e. the timeliness of the GAL's report and her ability to interview the Department's witnesses.

"[T]hese general principles apply to testimony excluded on cross-examination."
Cortez-Hernandez v. Commonwealth, 58 Va. App. 66, 77, 706 S.E.2d 893, 899 (2011). For this Court to consider whether the trial judge erroneously limited appellant's cross-examination of a witness, the record must contain a proffer of both the questions appellant wanted to ask and the expected answers the witness would have given. See Ray, 55 Va. App. at 649-50, 688 S.E.2d at 880. "In such cases, as long as the trial court does not prohibit counsel from proffering the necessary evidence for the record, we will not disturb the court's ruling on appeal." Cortez-Hernandez, 58 Va. App. at 77-78, 706 S.E.2d at 899.

Because the record fails to contain the proffer, Rule 5A:18 bars our consideration of this assignment of error.

IV.

Mother argues that the trial court erred in finding that termination of her parental rights was in the best interests of the children. The trial court terminated mother's parental rights based on Code § 16.1-283(B), (C)(2), (E)(iii), and (E)(iv).

When considering termination of parental rights, "the paramount consideration of a trial court is the child's best interests." Logan, 13 Va. App. at 128, 409 S.E.2d at 463.

Code § 16.1-283(E)(iii) states that a court may terminate a parent's parental rights if it is in the best interests of the child and there is clear and convincing evidence that

> the parent has been convicted of an offense under the laws of the
> Commonwealth . . . that constitutes felony assault resulting in
> serious bodily injury or felony bodily wounding resulting in
> serious bodily injury or felony sexual assault, if the victim of the
> offense was a child of the parent or a child with whom the parent
> resided at the time of such offense.

After R.R.'s death, mother entered an Alford plea to violating Code § 18.2-371.1(B), which states:

> Any parent, guardian, or other person responsible for the care of a
> child under the age of 18 whose willful act or omission in the care

- 8 -

of such child was so gross, wanton, and culpable as to show a reckless disregard for human life is guilty of a Class 6 felony.

By its express language, Code § 16.1-283(E) does not limit the authority of the trial court to terminate parental rights only to a child who is the direct victim of a parent's felonious assault. The express language of the statute permits the termination of parental rights of other children who would be endangered where a parent has feloniously assaulted one of her children or subjected any child to aggravated circumstances. The obvious purpose of the statute is to allow the court to terminate an individual's parental rights when the parent's conduct poses a serious endangerment to a child's well-being without requiring that the court wait until the child is harmed before terminating those rights.

At the time of the final hearing, the children had been in the Department's custody for approximately twenty months. The Department had tried to place some of the children with mother, but the children were returned to foster care. As the trial court noted, "It is clear, based on the evidence adduced that the challenges faced by [mother] in raising her children were and are insurmountable for her." The evidence proved that the children were doing well in foster care. "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Kaywood v. Halifax Cty. Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990).

Consequently, the trial court did not err in finding that it was in the best interests of the children to terminate mother's parental rights pursuant to Code § 16.1-283(E)(iii).

The trial court terminated mother's parental rights pursuant to Code § 16.1-283(B), (C)(2), (E)(iii), and (E)(iv). When a trial court's judgment is made on alternative grounds, we need only consider whether any one of the alternatives is sufficient to sustain the judgment of the trial court, and if so, we need not address the other grounds. See Fields v. Dinwiddie Cty. Dep't of

<u>Soc. Servs.</u>, 46 Va. App. 1, 8, 614 S.E.2d 656, 659 (2005) (the Court affirmed termination of parental rights under one subsection of Code § 16.1-283 and did not need to address termination of parental rights pursuant to another subsection). We hold that the trial court did not err in terminating mother's parental rights pursuant to Code § 16.1-283(E)(iii). Therefore, we will not consider whether the trial court erred in terminating mother's parental rights pursuant to the other code sections.

CONCLUSION

For the foregoing reasons, the trial court's ruling is affirmed.

<u>Affirmed.</u>